Argued and submitted October 9, 2000, on appeal, order denying motion to set aside default judgment reversed; order denying motion to vacate sheriff's sales reversed and remanded; default judgment vacated and remanded; otherwise affirmed on appeal and cross-appeal March 14, petition for review denied August 7, 2001 (332 Or 430)

## NATIONAL MORTGAGE COMPANY,
an Oregon corporation,
*Respondent - Cross-Appellant,*

*v.*

## ROBERT C. WYATT, INC.,
a California corporation,
*Appellant - Cross-Respondent.*

(C930738CV; CA A101042)

20 P3d 216

Bruce H. Orr argued the cause for appellant - cross-respondent. With him on the briefs was Meyer & Wyse LLP.

William G. Wheatley argued the cause for respondent - cross-appellant. With him on the briefs were Jacqua & Wheatley, P.C., John C. Rich, and Nichols, Zwaanstra & Rich, LLP.

Before Edmonds, Presiding Judge, and Kistler, Judge, and Deits, Chief Judge.*

EDMONDS, P. J.

---

\* Deits, C. J., *vice* Warren, S. J.

## EDMONDS, P. J.

Defendant appeals from the trial court's denial of its motion to set aside a default judgment entered against it and the denial of its motion to set aside the sheriff's sales of defendant's property pursuant to the judgment. ORCP 71 B(1). Plaintiff cross-appeals the trial court's judgment denying attorney fees to plaintiff. We reverse the ruling on defendant's ORCP 71 B(1) motions and affirm the denial of attorney fees to plaintiff.

■ We review a trial court's denial of a motion to set aside a judgment under ORCP 71 B(1) for an abuse of discretion, *Walters v. Kmart Corp.*, 149 Or App 65, 68, 942 P2d 286, *rev den* 326 Or 59 (1997), and recite the facts in the light most favorable to the party seeking to have the default judgment set aside.[1] *Wershow v. McVeety Machinery*, 263 Or 97, 102-03, 500 P2d 696 (1972). Defendant, a California corporation, was formerly operated by Robert Wyatt, who was its founder, president and chief executive officer. When Wyatt operated defendant, its corporate officers included secretary/chief financial officer (CFO) Beaulieu. Its registered agent for service of process in Oregon was attorney McGowan.[2] Defendant was in good standing with the state of California and had accumulated substantial assets. In 1986, defendant borrowed money from plaintiff's assignor and secured its loan by giving the lender trust deeds and interests in defendant's real and personal property in Beaverton.

Wyatt died in 1988 and left all of his real and personal property to his former wife, Kimberly. That devise included his interest in defendant corporation. Kimberly's father, Bev, was appointed as the personal representative of Wyatt's estate in both the Oregon and California probate proceedings. Kimberly's parents managed defendant's assets for

---

[1] Before the trial court, the parties framed their motions as "motions for summary adjudication," and there appears to have been some confusion about whether the trial court was required to use an ORCP 47 summary judgment standard in evaluating the motions. In our view, ORCP 47 has no relevance to the issues in this case.

[2] There are indications in the record that McGowan did not know he had been appointed as agent for service of process, and that Beaulieu may have listed McGowan's name on the corporate filings without first checking with McGowan.

a while, and while acting as personal representative of the Wyatt estate, Bev appointed himself as president/director/chief financial officer of defendant. His wife Sue was named the secretary of defendant. At that point, Beaulieu ceased to hold any corporate office with defendant. Bev did not update the corporation's filings with the California Secretary of State during his tenure as president.

In August 1990, defendant, while under Bev's control, entered into a lease of some of its real property and equipment in Beaverton to Supreme Enterprise, Inc., a corporation doing business as the Great China Restaurant (Supreme). Bev and his wife ultimately gave Kimberly control of defendant in February 1991 by resigning from their offices and leaving Kimberly as the only shareholder. Kimberly did not cause the election of a new board of directors nor the appointment of officers, or otherwise carry out any corporate formalities. She also did not file a new statement with the California Secretary of State reflecting the changes in corporate management. Consequently, the corporation did not have any actual officers or directors, despite its continuing existence as a corporate entity and its filings with the California Secretary of State.

In May 1991, the former secretary and CFO, Beaulieu, as defendant's "CPA," filed a new statement with the California Secretary of State. The filing stated that defendant continued in existence and that nothing about its corporate structure, directors or officers had changed since the last filing. Thus, by implication, the statement asserted that Wyatt (now deceased) was still the president, that Beaulieu was still the secretary and CFO, and that McGowan was still the registered agent for service of process. At the time that he filed the statement, Beaulieu was not an officer, director or shareholder of defendant, and the record is unclear whether he consulted with Kimberly or anyone else before filing the statement.

After 1992, defendant did not pay corporate taxes, and it also defaulted on the loan payments due to plaintiff. As a result, plaintiff initiated a nonjudicial foreclosure sale of property that included the Beaverton restaurant that Bev had leased to Supreme. On April 19, 1993, plaintiff bought

both the Beaverton real property and the equipment at non-judicial foreclosure sales, bidding less than what was owed to it by defendant.

Plaintiff then filed this action in July 1993. The complaint alleges that defendant breached its promise to Supreme by defaulting on its loan with plaintiff, and that plaintiff was the assignee of any claims that Supreme had against defendant under the terms of a new contract that plaintiff had entered into with Supreme. It also alleged that, as a result of the breach, Supreme was required to temporarily cease business, and then had to enter a new lease with "the new owners of the property" (the individual shareholders of Supreme) on less favorable terms. Consequently, plaintiff claimed that Supreme was damaged in the amount of $500,000.

To ascertain how to obtain service of process on defendant, plaintiff examined defendant's most recent filings with the California Secretary of State's office. Those filings, as discussed above, showed that Wyatt was defendant's president, Beaulieu was defendant's secretary/CFO, and McGowan was defendant's registered agent. Plaintiff served summonses on Beaulieu, McGowan, and Kimberly, which action was sufficient to establish service of process on defendant. ORCP 7 D(3)(b). Kimberly did not respond to her summons. Beaulieu, believing that he had no obligation or authority to act on behalf of the corporation, and that Bev's lawyer or someone else would take care of the problem, did nothing to respond to his summons. McGowan forwarded his summons to Beaulieu, who he assumed was still authorized to act for the corporation. On May 3, 1993, the corporation's powers, rights and privileges were suspended by the State of California for the failure to pay taxes.

In September 1993, plaintiff informed the court that it had obtained service of process on defendant and moved for an *ex parte* order of default under ORCP 69 A. The trial court granted the order of default. Plaintiff tendered to the court a proposed judgment for damages accompanied by a memorandum, which set out in its "points and authorities" section the amount of plaintiff's alleged losses. Those amounts purported

to represent the loss incurred by Supreme because of defendant's default on the loan. On September 10, 1993, the trial court entered a money judgment against defendant on plaintiff's claim in the amount of $230,856.

Plaintiff served notice of the order of default and the money judgment on Kimberly, McGowan, and Beaulieu. McGowan again forwarded to Beaulieu a copy of the papers that he had received, along with a letter stating that he did not represent the corporation, that he did not know why he had received a summons or copies of the judgment, and that the matter demanded urgent attention by those who could act on behalf of the corporation. McGowan also took steps to ascertain from Pickett, plaintiff's attorney, why he had received the legal documents involving defendant. He discovered then that he had been named as defendant's registered agent for service of process, and informed Pickett that he had not conceded to his appointment. Thereafter, plaintiff pursued recovery on the judgment through writs of execution.

When plaintiff asked the trial court to issue writs of execution on the judgment, it asserted to the trial court that defendant had very little personal property from which plaintiff could obtain a satisfaction of its judgment. Plaintiff therefore asked the trial court to waive the requirement of ORS 23.050(1)(a) that it first sell personal property before executing on real property. The trial court granted plaintiff's request in an order on September 16, 1993. That order included a "waiver" of the requirement regarding the sale of personal property. Plaintiff thereafter had defendant's real property sold at sheriff's sales. Plaintiff also moved for an amended judgment for attorney fees in the amount of $10,062, which the trial court granted. On December 14, 1993, the trial court entered an amended supplemental money judgment that included the attorney fees.

In July 1994, Kimberly was adjudged to be incompetent by a California court. Her brother, Michael, was appointed conservator of her personal and business affairs. Michael immediately appointed himself as the new director of defendant. As such, he redeemed one of the properties on which plaintiff had executed in July. On August 31, 1994, defendant, through Michael, moved to set aside the default

judgment in this case on the basis of mistake, inadvertence and excusable neglect, pursuant to ORCP 71 B(1)(a). On November 3, 1994, defendant filed an amended motion to set aside the default judgment, adding an allegation that plaintiff had "manufactured" its damages claim and had defrauded the trial court. Defendant also asked the trial court to set aside the sheriff's sales that had resulted from the writs of execution.

In support of its motion to set aside the judgment, defendant submitted an affidavit from Michael, in which he averred that Kimberly had been given exclusive control over defendant in 1991 and that her mental state had deteriorated greatly soon thereafter, causing her to lose almost $2 million of property and assets that had belonged to defendant. Michael's affidavit also asserted that he believed plaintiff may have known of Kimberly's mental state before it obtained its judgment against defendant. Defendant also submitted a signed, sworn report of Welles, the probate investigator for Ventura County, California, where Kimberly lived. The report sets forth, among other things, that Kimberly had become increasingly delusional between 1990 and 1994, that her level of functioning had decreased drastically in 1993 and 1994, and that she lacked the capacity to give informed consent for medical treatment. The report was based on several contacts with Kimberly, and it detailed Kimberly's inability to deal with her personal and business affairs. Defendant also submitted the California court order appointing Michael as the conservator for Kimberly and an affidavit from Dr. Harrison. Harrison's affidavit states, "Based on * * * examinations and records[,] in my judgment, [Kimberly] demonstrates delusional thinking and is unable to take care of her person or her estate." Defendant also submitted an affidavit by attorney Bleuel, who averred that he had met with Kimberly and that she was unable to understand that she would lose her property unless she personally took action to defend on behalf of defendant.

Plaintiff filed objections to the ORCP 71 motions on December 21, 1994. The parties engaged in an extensive motions battle that eventually resulted in the threshold issue being whether the judgment should be set aside on the

grounds of excusable neglect, fraud on the court or procedural irregularities. The trial court denied defendant's motion to set aside the judgment on January 28, 1998, and denied plaintiff's request for additional attorney fees. Both parties appeal from the trial court's rulings.

Defendant's contentions on appeal are numerous, but they can be grouped into three main categories. First, defendant contends that the default judgment should be set aside for a variety of reasons, including excusable neglect. Second, defendant contends that the trial court should have set aside the subsequent sheriff's sales of its property. Finally, defendant contends that the trial court erred in granting protective orders to prevent its discovery of certain of plaintiff's documents.

We turn first to defendant's arguments regarding the trial court's refusal to set aside the default judgment, and we focus on the ground of "excusable neglect" under ORCP 71 B(1)(a).[3] The trial court did not expressly rule on the issue. However, inasmuch as excusable neglect was a ground asserted by defendant to the trial court, the court's denial of defendant's motion is an implicit ruling that defendant's neglect was inexcusable. We note at the outset of our analysis that the setting aside of default judgments on the ground of neglect under ORCP 71 is predicated on the underlying policy that defaulted parties are entitled to have their day in

---

[3] ORCP 71 B provides, in part:

"(1) On motion and upon such terms as are just, the court may relieve a party or such party's legal representative from a judgment for the following reasons: (a) mistake, inadvertence, surprise, or excusable neglect; (b) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 64 F; (c) fraud, misrepresentation, or other misconduct of an adverse party; (d) the judgment is void; or (e) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application. A motion for reasons (a), (b), and (c) shall be accompanied by a pleading or motion under Rule 21 A which contains an assertion of a claim or defense. The motion shall be made within a reasonable time, and for reasons (a), (b), and (c) not more than one year after receipt of notice by the moving party of the judgment. A copy of a motion filed within one year after the entry of the judgment shall be served on all parties as provided in Rule 9 B, and all other motions filed under this rule shall be served as provided in Rule 7. A motion under this section does not affect the finality of a judgment or suspend its operation."

court, when it can be done without doing violence to the regular disposition of litigation. *Hiatt v. Congoleum Industries*, 279 Or 569, 579, 569 P2d 567 (1977). Thus, ORCP 71 B is to be liberally construed to accomplish that goal. *Wood v. James W. Fowler Co.*, 168 Or App 308, 312, 7 P3d 577 (2000).

■    When the ground of excusable neglect is asserted, the defaulted party must show, in addition to excusable neglect, that the motion to set aside the judgment was brought within a reasonable time, not to exceed one year, and that the party has a meritorious defense. *See, e.g., Bella v. Aurora Air, Inc.*, 279 Or 13, 17-18, 566 P2d 489 (1977); *see also Reitz v. Coca-Cola*, 36 Or App 487, 492, 548 P2d 791 (1978) (construing predecessor statute). Thus, the question is whether defendant has met those requirements. It is axiomatic that a corporation can only act through its authorized representatives. In 1993, Kimberly was defendant's only authorized representative. She was the sole shareholder, and after the resignation of Bev and Sue there were no other officers or directors of defendant. Beaulieu was no longer an officer of defendant at the time that plaintiff filed its claim, and McGowan had no authority from defendant to undertake a defense on its behalf.

■    The record shows that Kimberly became progressively incapacitated during the relevant time period. Her disability began before this action—possibly as early as 1990, but definitely by 1992. The record is replete with evidence that she was delusional in 1993. By mid-1994, she had been adjudicated by a court to be incapable of taking adequate care of her personal affairs, much less her corporate affairs. In light of Kimberly's mental illness, we hold that defendant's failure to respond to the service of process constitutes excusable neglect. *See also Fisher v. Fenter*, 75 Or App 408, 706 P2d 593 (1985) (reversing the denial of a motion to set aside a default judgment under ORCP 71 B on the ground of excusable neglect because of the defendant's psychiatric difficulties).

■    Plaintiff argues that the determination of excusable neglect should not turn on Kimberly's actions or omissions alone. It asserts that defendant's violations of California law and the inaction on the part of McGowan and Beaulieu, who

were held out by the corporation in its filings as officers, should result in the affirmance of the trial court's ruling. We believe that neither argument controls on the issue of defendant's excusable neglect. Plaintiff's arguments implicitly rely on the premise that McGowan and Beaulieu had apparent authority to act for the corporation. However, the existence of ostensible authority to receive service of process does not necessarily imply the additional authority to appear on behalf of defendant in a court proceeding. Because only Kimberly had authority in 1993 to act on behalf of defendant in the defense against plaintiff's claim, the question of whether excusable neglect existed necessarily focuses on her circumstances and not on what plaintiff thought about the corporate roles of McGowan and Beaulieu. Defendant's apparent violations of California corporate law lead to a similar conclusion. They too stem from Kimberly's psychological problems.

■ The second question is whether defendant, once it had notice of the entry of the judgment, moved to set the judgment aside within a reasonable amount of time. ORCP 71 contains a one-year ceiling on motions to set aside based on excusable neglect. Here, the notice of the entry of judgment was served on the corporation's registered agent for service of process in September 1993, and defendant moved to set the judgment aside in August 1994. ORCP 71 also contains a "reasonableness" requirement. That requirement must be met even when the motion to set aside is filed within the one-year time period. The default judgment was entered on September 10, 1993. However, it was not until July 8, 1994, when Michael was appointed conservator and became a director of defendant, that anyone could legally act on Kimberly's behalf. After Michael was appointed, he moved to set the judgment aside on August 29, 1994. Under those circumstances, defendant's motions to set aside the judgment were timely.

■ We turn to the third requirement—whether defendant tendered a meritorious defense as part of its motion. ORCP 71 B(1) provides that a motion based on excusable neglect "shall be accompanied by a pleading or motion under Rule 21 A which contains an assertion of a claim or defense." In *Bella*, the court explained that

"[t]he requirement of presenting a meritorious defense does not turn on the form of the tendered motion or pleading; its object is that the trial court satisfy itself that there are in fact substantial issues to be decided before allowing a party to reopen a defaulted case." *Bella*, 279 Or at 17-18.

Defendant contends that while plaintiff was pursuing foreclosure of the restaurant property, plaintiff offered to sell the restaurant to the individual shareholders of Supreme and to finance the sale. The shareholders agreed to the purchase. As part of the lending agreement between the individual shareholders and plaintiff, Supreme agreed to assign to plaintiff any rights that it had to sue defendant for defendant's breach of the former lease.

After the purchase and financing agreement was executed, the shareholders sought to lease the restaurant to Supreme for $5,400 per month, which was only slightly higher than the rent that they would have paid to defendant for the same time period. However, plaintiff had reserved the right as part of its financing agreement to approve all leases of the property, and it refused to give its consent to the proposed lease. Eventually, the shareholders entered into a lease of the restaurant to Supreme, approved by plaintiff, for $6,000 monthly rent for the first two years and $6,500 for the remainder of the ten-year lease. In its breach of lease claim against defendant, plaintiff, as the assignee of Supreme's rights against defendant, alleges that it was damaged because Supreme was forced to enter into a new lease with the property's new owners, with less favorable terms than it had enjoyed with defendant before the breach. The damages awarded to plaintiff in the default judgment represent a calculation of the differences between the lease amounts under the former lease with defendant and the new lease with the shareholders, over a ten-year period.

Defendant argues that if it is permitted to defend against plaintiff's claim, it will demonstrate that plaintiff has manufactured its damage claim by forcing Supreme to enter into a lease with its own shareholders for increased rent, when it could have entered into a lease with those shareholders with rent much closer to that required by their former lease with defendant. Defendant points to the rule of *Buck v.*

*Mueller,* 221 Or 271, 280, 351 P2d 61 (1960), that "[t]he standard measure of damages for the loss or deprivation of a leasehold interest is the difference between the reasonable rental value of the premises and the reserved rent." It asserts that plaintiff rejected a proffered lease for $5,400 per month and that plaintiff manufactured a higher rental amount by wrongfully withholding its consent to the lease at that amount. Defendant's argument is supported further by the legal principle that "a plaintiff cannot recover damages for losses that he could have avoided by reasonable conduct on his part." *Blair v. United Finance Co.,* 235 Or 89, 91, 383 P2d 72 (1963). Although plaintiff disagrees with defendant's contentions and claims that it had viable commercial reasons for its actions, the disagreement highlights the reason why ORCP 71 exists: to give all litigants an opportunity to have their side of a controversy heard and determined. We conclude that defendant has tendered a timely meritorious defense that raises substantial issues, and that the default judgment must be set aside because of defendant's excusable neglect.

As to the writs of execution and the sheriff's sales issued pursuant to the default judgment, the trial court did not reach defendant's contentions because it denied defendant's motion to set aside the judgment. The trial court must reconsider the continuing validity of those writs and sales in light of our ruling that the default judgment must be vacated. We do not explore that issue further because the record before us does not indicate whether there are other factors that affect the continuing validity of the execution sales.

Defendant also raises an issue under ORCP 36 C about a protective order issued by the trial court that prevented defendant's discovery of certain documents in plaintiff's control. Defendant sought documents that would normally be protected by the attorney/client privilege. It wanted the documents to bolster its claim that plaintiff and its attorney perpetrated fraud on the court. In light of our holding that the judgment is to be set aside on the ground of excusable neglect, it is not apparent to us that the issue of fraud on the court remains. Accordingly, we decline to address the assignment further. Defendant's remaining arguments, all

involving the denial of its motion to set aside the judgment, also do not warrant discussion in light of our holding.

Because the underlying judgment on which the attorney fee judgment is based must be vacated, we affirm on plaintiff's cross-appeal.

On appeal, order denying motion to set aside default judgment reversed; order denying motion to vacate sheriff's sales reversed and remanded; default judgment vacated and remanded; otherwise affirmed on appeal and cross-appeal.