Argued and submitted October 3, reversed and remanded with instructions to set aside the judgment terminating father's parental rights November 26, 2008

In the Matter of T. G. R.,
aka T. R. R., a Minor Child.

STATE ex rel DEPARTMENT OF HUMAN SERVICES,
*Respondent,*

*v.*

G. R.,
*Appellant.*

Linn County Circuit Court
J060353;
Petition Number 06084JTF;
A138868

197 P3d 61

Shannon Flowers, Deputy Public Defender, argued the cause for appellant. With her on the briefs was Peter Gartlan,

Chief Defender, Legal Services Division, Office of Public Defense Services.

Cecil A. Reniche-Smith, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rosenblum, Judge.

HASELTON, P. J.

.

**HASELTON, P. J.**

Father, whose parental rights were terminated, pursuant to ORS 419B.819(7),[1] after he failed to appear at the time scheduled for trial, appeals. He assigns error to, *inter alia*, the denial of his motion pursuant to ORS 419B.923(1) to set aside the judgment terminating his rights.[2] We conclude that, as a matter of law, father's nonappearance was the result of "excusable neglect" within the meaning of ORS 419B.923(1)(b) and that, in the totality of the circumstances, the trial court abused its discretion in denying father's motion. Consequently, we reverse and remand with instructions to set aside the judgment terminating father's parental rights.

The material underlying facts are not in dispute. The child, T, was born on June 26, 2006. At that time, mother and T both tested positive for amphetamines. Consequently, DHS petitioned for jurisdiction and T was placed in substitute care in early July.

Father made his first appearance in the case on July 28, 2006, at which time an attorney was appointed for him. The court informed father that he was required to appear at the jurisdictional hearing scheduled for September 8, 2006, and that, if he did not, DHS would be allowed to put on a *prima facie* case. Father responded that he understood.

On September 8, father did not appear. At the jurisdictional hearing, the attorneys for mother and father indicated that it was likely that their clients would admit to allegations in the petitions, and the court set the matter over until September 29.

On September 29, mother appeared and admitted to allegations in the petition. Father did not appear, and his attorney informed the court that he had no address for father

---

[1] ORS 419B.819(7) provides, in part:

"If a parent fails to appear for any hearing related to the petition, * * * as directed by summons or court order under this section or ORS 419B.820, the court, without further notice and in the parent's absence, may:

"(a)  Terminate the parent's rights * * *; and

"(b)  Take any other action that is authorized by law."

[2] The text of ORS 419B.923(1) is set out below. *See* 224 Or App at 138-39.

and no way to contact him. The court allowed the state to put on a *prima facie* case against father as to the jurisdictional allegations in the petition and subsequently directed that T be placed in foster care with a relative.

Over approximately the next 16 months, the court held various hearings, none of which father attended. Father did not have any contact with DHS or T throughout that period, although he maintained contact with mother. Mother, who was in and out of treatment programs and jail, did not make significant progress toward reunification with T, and, in late 2007, the court changed the plan for T from reunification to adoption. Because father's whereabouts were unknown, the termination petition was served by publication in January 2008, and father was ordered to appear on February 8, 2008, at 1:15 p.m.

Father appeared on February 8 in response to the published summons. The court reappointed his attorney, suggested father keep in contact with his attorney, and explained that his next appearance would be at 11:00 a.m. on March 6, 2008, for a trial readiness hearing, and that the trial would occur at 9:00 a.m. on March 10, 2008.

On March 6, father was present with counsel for the readiness hearing. At that time, father's attorney informed the court that he had met with father several days earlier and that they were preparing for trial, but that he needed additional time to interview witnesses, including father's probation officer and therapist, whom he had subpoenaed to testify on father's behalf. The court granted a seven-day continuance and rescheduled the trial to March 17 at 9:00 a.m. Father was served with an order to appear, which specified the trial date and time as March 17, 2008, at 9:00 a.m. That notice, in accordance with ORS 419B.819(4),[3] informed father that, if he failed to appear, "the court may, without further

_____

[3] ORS 419B.819(4)(b) requires that a summons for a proceeding to terminate parental rights contain:

"A statement that, if the parent fails to appear at the time and place specified in the summons or in an order under ORS 419B.820 [notice to parent contesting petition to terminate parental rights] * * * the court may, without further notice and in the parent's absence, terminate the parent's rights * * *, either on the date specified in the summons or order or on a future date, and may take any other action that is authorized by law."

notice and in the parent's absence, may terminate the parent's parental rights[.]"

On March 17 at 9:00 a.m., both father's attorney and mother's attorney were present in the courtroom. However, neither parent was present. Father's attorney explained to the court that he and mother's attorney "have just talked to people who have talked to our clients and for some reason they both thought it was 11:00." Mother's counsel told the court that the parents had apparently confused the 11:00 a.m. starting time for the prior trial readiness proceeding with the 9:00 a.m. time set for trial. Mother's attorney also represented that "they're on their way" and that mother was "in a vehicle in Crabtree" (near Albany).

Nevertheless, the trial court determined to proceed and directed DHS to present its *prima facie* case in support of termination. After DHS presented the testimony of a single witness, the court orally ordered that both parents' parental rights be terminated, including, as to father, on grounds of unfitness, ORS 419B.504, neglect, ORS 419B.506, and abandonment, ORS 419B.508. The proceeding ended at 9:18 a.m.

Four days later, on March 21, 2008, father moved to set aside the termination judgment.[4] In an affidavit in support of his motion, father averred:

"My last attended court appearance was the 11:00 am scheduled trial readiness on March 6, 2008. I was informed that if a trial readiness was to be conducted on March 13, 2008 that it would be at 11:00. I erroneously and mistakenly assumed that the trial that was scheduled for March 17, 2008 was to begin at 11:00 am.

"* * * * *

"I received a call from the child's paternal grandmother just before 9:00 am on March 17, 2008. She received a call from my attorney and was informed that trial was scheduled to begin at 9:00 am and inquired about my presence

---

[4] At that point, the termination judgment had not yet been entered. Indeed, the court did not enter the termination judgment until 20 days after father filed his motion to set aside. However, by the time the court ruled on the motion to set aside, that judgment had been entered.

when I was not located in the courthouse. I was then staying with a friend in Brownsville. I immediately drove to Albany. I arrived at the courtroom at 9:31 am on March 17, 2008."

Father also stated in that affidavit that another termination of parental rights case had been scheduled for trial on March 17, 2008, before the same judge. Father further stated that the petition in that case had been filed six months before the petition in this case and that father's counsel represented a party in the other case. Given those circumstances, father asserted, that earlier-filed case would have had priority—which, if father had been present in the courtroom at 9:00 a.m., would have required a reset of the trial in this case.

DHS opposed father's motion, arguing that father had not shown good cause to set aside the judgment. The trial court denied father's motion, determining that there was not good cause to set aside the judgment:

"In light of the amount of both verbal and written notice that your client was provided of the time and date for trial and the lack of good cause for failing to appear when required the court does not find good cause to set aside the judgment. The motion is denied."

Father appeals from the order denying his motion under ORS 419B.923(1)(b), arguing, in part, that the trial court abused its discretion in denying that motion.[5] ORS 419B.923 provides, in part:

"(1)   Except as otherwise provided in this section, on motion and such notice and hearing as the court may direct, the court may modify or set aside any order or judgment made by it. Reasons for modifying or setting aside an order or judgment include, but are not limited to:

_____

[5] Father also assigns error to (1) the failure of the trial court to direct a continuance of the proceedings on March 17, 2008, following counsel's representations as to the parents' mistaken understanding as to the time of trial and (2) the court's entry of judgment based on what father contends was a legally insufficient *prima facie* presentation. DHS responds, in part, that, because father appeals only from the order denying his motion to set aside pursuant to ORS 419B.923(1)(b) and not also from the judgment terminating his parental rights, matters pertaining to the latter are not subject to our review. Given our disposition, we need not address or resolve that dispute.

"* * * * *

"(b)   *Excusable neglect.*

"* * * * *

"(3)   A motion to modify or set aside an order or judgment must be made within a reasonable time except no order or judgment pursuant to ORS 419B.527 may be set aside or modified during the pendency of a proceeding for the adoption of the ward, nor after a petition for adoption has been granted."

(Emphasis added.)

■      ORS 419B.923(1)(b), by its text and design, requires a two-step process. First, a party seeking to set aside a dependency judgment or order must establish that the party's nonappearance was the result of "excusable neglect." Second, even if a party makes that predicate showing, the trial court retains some range of discretion as to whether to allow the motion—*i.e.*, "the court *may* * * * set aside any order or judgment made by it." ORS 419B.923(1) (emphasis added).

■■   · Where, as here, the material circumstances pertaining to the movant's nonappearance are uncontroverted, we understand the determination of whether those circumstances establish "excusable neglect" to be a matter of law.[6] That treatment comports with the Supreme Court's characterization of the functionally analogous statutory term "good cause." In *State v. Johnson*, 339 Or 69, 86, 116 P3d 879 (2005), the court, in the course of deciding a statutory speedy trial question, recounted at length much of its early case law concerning "good cause" standards, concluding that,

---

[6] Where the material facts pertaining to excusable neglect are in dispute, we accept the trial court's predicate findings if they are supported by any evidence. *See generally Matchey v. Staffing Network Holdings, Inc.*, 195 Or App 576, 579, 98 P3d 1174 (2004), *rev den*, 338 Or 124 (2005). Here, DHS, although opposing the motion, did not offer any evidence to rebut father's factual assertions in his affidavit concerning his reason for being late or his assertion that, had he been on time, the trial would have been rescheduled in any event given that another termination of parental rights case had been scheduled for the same time and had priority because it was older. Additionally, the court's order denying father's motion does not contain factual findings, or any information from which we may infer that it made implicit factual findings or that it found father's testimony in his affidavit not to be credible.

although the cases often described a discretionary standard, the question of good or sufficient cause is a legal question:

> "We acknowledge the temptation to treat indefinite terms like 'good cause' [or] 'sufficient reason' * * * as calling for a subjective determination and, thus, as invoking personal judgment. However, it is clear that, when such terms appear in a statutory context, they are focused on real, albeit sometimes difficult to discern, legal standards: the *legislature's* view of what is 'good' * * *. As such, in the absence of a factual dispute, a determination that 'good cause' not to dismiss has been shown under *former* section 320 [of the speedy trial statute] * * * invokes an objective standard and must be reviewed for legal error.[10] In no case would judicial *discretion* play any role in the 'good cause' determination of *former* section 321 [of the speedy trial statute].

> ---
> "[10] Of course, any trial court decision as to a disputed issue of *fact* will be reviewed under a far more deferential standard."

(Emphasis in original.) *See also State v. Biscotti*, 219 Or App 296, 302, 182 P3d 269 (2008) (concluding that, as a matter of law, carelessness by a prosecutor could not constitute "good cause" for delay in entry of judgment for restitution).

■ The trial court's "second step" exercise of discretion is subject, predictably, to review for "abuse of discretion." *Accord Wood v. James W. Fowler Co.*, 168 Or App 308, 311-12, 7 P3d 577 (2000) (reviewing denial of a motion, pursuant to ORCP 71 B(1), to set aside a default judgment). Nevertheless, that discretion is not unbridled; rather, as explained below, the permissible scope of discretion under ORS 419B.923(1)(b) is defined and circumscribed by reference to several salient considerations.

We return to "excusable neglect." The "excusable neglect" provision of ORS 419B.923(1)(b) is obviously analogous to the parallel feature of ORCP 71 B(1). *See State ex rel Juv. Dept. v. D. J.*, 215 Or App 146, 153-54, 168 P3d 798 (2007) (addressing meaning of "reasonable time" for filing motion to set aside under ORS 419B.923(1); noting similarities between ORS 419B.923 and ORCP 71). In that regard,

our observations in *Bisaccio v. Hart*, 213 Or App 75, 79, 159 P3d 1179 (2007), are instructive here:

> "ORCP 71 B is 'predicated on the underlying policy that defaulted parties are entitled to have their day in court, when it can be done without doing violence to the regular disposition of litigation.' *National Mortgage Co. v. Robert C. Wyatt, Inc.*, 173 Or App 16, 23-24, 20 P3d 216, *rev den*, 332 Or 430 (2001). Thus, ORCP 71 B is to be liberally construed to accomplish that goal. *Wood*[, 168 Or App at 312]. As the Supreme Court explained in *Hiatt v. Congoleum Industries*, 279 Or 569, 579, 569 P2d 567 (1977) (quoting *Wagar v. Prudential Ins. Co.*, 276 Or 827, 833, 556 P2d 658 (1976)), '[o]rdinarily, if [a movant] presents reasonable grounds excusing his default, the courts are liberal in granting relief.' "

(Brackets in original.)

Notwithstanding their patent similarity and common remedial purpose, the analogy between the two provisions is not exact. Most significantly, although ORCP 71 B pertains generally to civil disputes, ORS 419B.923(1) applies solely, and particularly, to the juvenile dependency context. The nature of the interests determined by dependency orders and judgments are qualitatively different from those generally determined in civil actions.

Specifically, as here, parental rights can be irrevocably terminated. Although the juvenile dependency statutes expressly provide that, in certain circumstances, such an adjudication can occur in a parent's absence, *see* ORS 419B.819(7), the legislative history of ORS 419B.923(1) discloses that the legislature, in enacting the statute's "excusable neglect" provision, was especially concerned with "horror stor[ies]" of parents having their rights terminated in their absence when, because of good faith mistakes, they went to the wrong courtroom or appeared at the wrong time. *See* Tape Recording, Senate Committee on Judiciary, HB 2611, Apr 30, 2001, Tape 115, Side B (statements of Sen John Minnis and Kathie Osborn, Senior Attorney, The Juvenile Rights Project). Given that history, we have no doubt that the legislature intended "excusable neglect" in ORS 419B.923(1)(b) to encompass a parent's reasonable, good

faith mistake as to the time or place of a dependency proceeding.[7]

■       The uncontroverted evidence in this record establishes that that is precisely what occurred here. Although father had failed to maintain contact with the court or his counsel, much less to actively participate in the dependency proceedings, between at least September 2006 and February 8, 2008, father did appear for the pretrial conference on February 8. He subsequently conferred with counsel, actively preparing for trial, including identifying witnesses who could testify on his behalf.

Father then appeared at the scheduled March 6 readiness hearing (which began at 11:00 a.m.), at which the court granted a one-week reset of the termination trial, from March 10 to March 17, because of father's counsel's need for additional time to prepare for trial. As part of that preparation, father's attorney caused subpoenas to be served on a variety of witnesses, including father's probation officer, his drug and alcohol counselor, and various family members. In short, father and his counsel were vigorously preparing for trial.

Notwithstanding written and oral notice that the trial was to begin at 9:00 a.m. on March 17, father was not present in the courtroom at that time. However, counsel informed the court that both parents mistakenly believed the trial was to begin at 11:00 a.m. and were "on their way." The trial court determined, nevertheless, to proceed in their absence. Father, upon learning of his mistake, immediately attempted to rectify it, arriving in the courtroom, after driving from Brownsville to Albany,[8] at 9:31 a.m., 13 minutes

---

[7] That understanding also comports with our enforcement of procedural safeguards pertaining to dependency proceedings in a somewhat different context. In *State ex rel Dept. of Human Services v. Sumpter*, 201 Or App 79, 116 P3d 942 (2005), we held that there was insufficient basis to conclude that the guardian *ad litem* for a mentally ill mother had knowingly and intentionally relinquished the mother's right to a trial in the termination proceeding. In reviewing and correcting that matter as "error of law apparent on the face of the record," ORAP 5.45, we emphasized the gravity of the error, "as it involves the constitutional safeguards applicable to a parent's fundamental rights involving her child." *Sumpter*, 201 Or App at 90.

[8] A distance of approximately 25 miles.

after the court had orally ordered termination upon completion of the state's *prima facie* presentation. Thereafter, in support of his motion to set aside, father averred that he had innocently, inadvertently confused the 11:00 a.m. starting time for the pretrial status conference with the 9:00 a.m. starting time for the trial.

In sum, father was actively engaged in preparing for the termination trial, failed to appear because of a mistake as to the time of trial, acted immediately upon learning of that mistake, and offered a reasonable, uncontroverted explanation for his mistake. The totality of those circumstances establishes, as a matter of law, "excusable neglect" for purposes of ORS 419B.923(1)(b).

■■ That does not, however, end the inquiry. Rather, as noted, given the design of ORS 419B.923(1)(b), the trial court has some discretion to deny a motion to set aside even if the movant establishes "excusable neglect." We are unaware of any published discussion of the contours of that discretion. We can, however, divine several considerations that should reasonably guide, and restrict, the exercise of discretion in this context. Those considerations include, at least, the following: (1) the nature and magnitude of the interest that was adjudicated and "forfeited" in the movant's absence; (2) the movant's promptness in attempting to rectify his or her nonappearance; (3) the extent to which the interests of other parties and the court would be prejudiced if the motion were granted, including because of intervening detrimental reliance on the judgment; and (4) whether the movant can present at least a colorable defense on the merits.

Here, those considerations militate decisively in father's favor. First, it is difficult to imagine a more profound interest to be lost by way of an irrevocable default than parental rights. Second, father here moved very quickly to set aside the termination—within four days of the termination hearing—and, indeed, 20 days before the entry of the termination judgment. Third, the record discloses no detrimental reliance by any party on the court's oral termination order in the four-day interval between that order and the filing of the motion to set aside. Nor does the record disclose that T's interest would be meaningfully impaired if the trial were

reset.[9] Further, although we are most mindful of the exigencies of dependency proceedings, the uncontradicted information in father's affidavit shows that another termination case was scheduled for trial the same day and would have taken precedence over this case, which would have had to have been rescheduled. That strongly suggests that the requested relief could have been granted "without doing violence to the regular disposition of litigation." *National Mortgage Co. v. Robert C. Wyatt, Inc.*, 173 Or App 16, 24, 20 P3d 216, *rev den*, 332 Or 430 (2001). Finally, whatever the ultimate merit of his position, father was, in fact, prepared to defend against the substance of the termination petition.

Conversely, we do not discern—and the state does not identify—any discretionary consideration compelling the denial of relief under ORS 419B.923(1)(b). Accordingly, in the totality of the circumstances, the trial court erred in denying father's motion under ORS 419B.923(1)(b).

Reversed and remanded with instructions to set aside the judgment terminating father's parental rights.

---

[9] As noted, father's initial request for a continuance resulted in a delay of only one week, from March 10 to March 17.