Argued and submitted May 17, reversed and remanded with instructions to set aside judgment terminating mother's parental rights July 18, 2012

In the Matter of S. W. D.
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

K. M. P.,
*Appellant.*

Coos County Circuit Court
10JV0056;
Petition Number 060211SDM;
A150404

284 P3d 519

Shannon Flowers, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Appellate Division, Office of Public Defense Services.

Cecil A. Reniche-Smith, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

SCHUMAN, P. J.

## SCHUMAN, P. J.

The juvenile court terminated mother's parental rights in her 20-month-old son after the state made a *prima facie* showing at a pretrial conference at which mother failed to appear. Mother subsequently filed a motion to set aside the termination judgment because her nonappearance was the result of excusable neglect. The court summarily denied her motion. Mother appeals, contending that her nonappearance was due to excusable neglect and that the juvenile court abused its discretion in denying her motion to set aside the termination judgment. We agree. We therefore reverse and remand.

In April 2010, the juvenile court took jurisdiction over mother's son. On June 2, 2011, the Department of Human Services (DHS) filed a petition to terminate mother's parental rights to the child. The juvenile court scheduled a pretrial conference for 9:00 a.m. November 21, 2011, and a trial for December 7 through December 9, 2011. The court ordered mother to appear personally and advised her that her parental rights could be terminated if she failed to do so.

Mother did not appear at the pretrial conference scheduled for 9:00 a.m. November 21, 2011. Her counsel advised the court and other parties that counsel had spoken with mother by telephone several times that morning, and learned from her that she had mistakenly written down the hearing's start time as 2:30 p.m. and, when she discovered the mistake, attempted without success to find transportation to the courthouse. DHS requested the court to allow it to move forward with a default and present a *prima facie* case for termination of mother's parental rights. Mother's counsel objected and stated that mother's mistake as to the time of the hearing and inability to find a ride to the courthouse could constitute excusable neglect. Mother's counsel asked the court to delay the proceeding to later in the day. The court denied mother's request without explanation and allowed the state to present its *prima facie* case for termination of mother's parental rights based on unfitness. At the conclusion of the hearing, the juvenile court ruled from the bench that it would terminate mother's parental rights and cancelled the trial scheduled for December 7,

2011. The court entered a termination judgment on November 30, 2011.

On December 1, 2011, mother filed a motion to set aside the default judgment with a supporting affidavit. Mother averred that she had mistakenly written down the incorrect time of 2:30 p.m. for the November 21, 2011, 9:00 a.m. hearing; that she had attempted to find a ride to the courthouse when she learned of her mistake on November 21, 2011; and that she and another witness intended to testify on her behalf at trial. The juvenile court denied mother's motion on December 5, 2010, again without explanation. Mother appeals.

ORS 419B.819(7) authorizes a juvenile court to terminate a parent's rights if that parent fails to appear "for any hearing related to the [termination] petition." Under ORS 419B.923(1)(b), however, the juvenile court has the discretion to set aside a termination judgment on the basis of excusable neglect:

> "Except as otherwise provided in this section, on motion and such notice and hearing as the court may direct, the court may modify or set aside any order or judgment made by it. Reasons for modifying or setting aside an order or judgment include, but are not limited to:
>
> "* * * * *
>
> "(b)  Excusable neglect."

We addressed the issue of excusable neglect as a ground for setting aside a default judgment of termination in *State ex rel Dept. of Human Services v. G. R.*, 224 Or App 133, 135, 197 P3d 61 (2008). As we explained in that case, ORS 419B.923(1)(b) requires the court to engage in a two-step, sequential analysis in determining whether the judgment should be set aside because of excusable neglect. First, the court must determine whether the parent has established as a matter of law that the nonappearance resulted from excusable neglect. 224 Or App at 139. The concept of "excusable neglect" as used in ORS 419B.923(1)(b) encompasses "a parent's reasonable, good faith mistake as to the time or place of a dependency proceeding." *G. R.*, 224 Or App at 141-42. Second, if the parent makes the predicate

showing of excusable neglect, the court "retains some range of discretion" to determine whether, in the totality of the circumstances, to allow the motion. *Id.* at 143.

As noted, the juvenile court in this case summarily denied mother's motion to set aside the judgment terminating her parental rights. On appeal, mother contends that her nonappearance constitutes excusable neglect as a matter of law, and that, in light of the totality of the circumstances, the court improperly exercised its discretion to deny mother's motion to set aside the termination judgment. This court reviews the juvenile court's determination as to whether there was excusable neglect for errors of law, and reviews the juvenile court's ruling denying a motion to set aside the termination judgment for an abuse of discretion. *Id.* at 139-40.

*G. R.* is sufficiently similar to the present case that it provides a good template for our review of the juvenile court's order. In *G. R.*, the father had been actively working with his attorney and had appeared at two pretrial hearings at 11:00 a.m. *Id.* at 137. The court scheduled a subsequent trial for 11 days later, to begin at 9:00 a.m., and ordered the father to appear in person. When the father failed to do so, the court allowed the state to present its *prima facie* case and ruled orally that it would terminate father's parental rights. Four days later, the father moved to set aside the termination judgment. In support of his motion, the father averred that he had mistakenly believed that the trial had been set to begin at 11:00 a.m., rather than 9:00 a.m.; that upon learning of his mistake, he immediately drove to the courthouse and arrived at 9:31 a.m.; and that because the court had scheduled another termination trial for the same day, his trial would have been rescheduled in any event. *Id.* at 137-38.

The juvenile court in *G. R.* denied the father's motion to set aside the termination judgment, and the father appealed, arguing that the mistake as to the time of trial constituted excusable neglect and that the juvenile court had abused its discretion in denying his motion to set aside the termination judgment. We agreed, and reversed the order denying the father's motion to set aside the judgment. We explained:

"Notwithstanding written and oral notice that the trial was to begin at 9:00 a.m. on March 17, father was not present in the courtroom at that time. However, counsel informed the court that both parents mistakenly believed the trial was to begin at 11:00 a.m. and were 'on their way.' The trial court determined, nevertheless, to proceed in their absence. Father, upon learning of his mistake, immediately attempted to rectify it, arriving in the courtroom, after driving from Brownsville to Albany, at 9:31 a.m., 13 minutes after the court had orally ordered termination upon completion of the state's *prima facie* presentation. Thereafter, in support of his motion to set aside, father averred that he had innocently, inadvertently confused the 11:00 a.m. starting time for the pretrial status conference with the 9:00 a.m. starting time for the trial.

"In sum, father was actively engaged in preparing for the termination trial, failed to appear because of a mistake as to the time of trial, acted immediately upon learning of that mistake, and offered a reasonable, uncontroverted explanation for his mistake. The totality of those circumstances establishes, as a matter of law, 'excusable neglect' for purposes of ORS 419B.923(1)(b).

"That does not, however, end the inquiry. Rather, as noted, given the design of ORS 419B.923(1)(b), the trial court has some discretion to deny a motion to set aside even if the movant establishes 'excusable neglect.' We are unaware of any published discussion of the contours of that discretion. We can, however, divine several considerations that should reasonably guide, and restrict, the exercise of discretion in this context. Those considerations include, at least, the following: (1) the nature and magnitude of the interest that was adjudicated and 'forfeited' in the movant's absence; (2) the movant's promptness in attempting to rectify his or her nonappearance; (3) the extent to which the interests of other parties and the court would be prejudiced if the motion were granted, including because of intervening detrimental reliance on the judgment; and (4) whether the movant can present at least a colorable defense on the merits.

"Here, those considerations militate decisively in father's favor. First, it is difficult to imagine a more profound interest to be lost by way of an irrevocable default than parental rights. Second, father here moved very quickly to set aside the termination—within four

days of the termination hearing—and, indeed, 20 days before the entry of the termination judgment. Third, the record discloses no detrimental reliance by any party on the court's oral termination order in the four-day interval between that order and the filing of the motion to set aside. Nor does the record disclose that [the child's] interest would be meaningfully impaired if the trial were reset. Further, although we are most mindful of the exigencies of dependency proceedings, the uncontradicted information in father's affidavit shows that another termination case was scheduled for trial the same day and would have taken precedence over this case, which would have had to have been rescheduled. That strongly suggests that the requested relief could have been granted 'without doing violence to the regular disposition of litigation.' *National Mortgage Co. v. Robert C. Wyatt, Inc.*, 173 Or App 16, 24, 20 P3d 216, *rev den*, 332 Or 430 (2001). Finally, whatever the ultimate merit of his position, father was, in fact, prepared to defend against the substance of the termination petition.

"Conversely, we do not discern—and the state does not identify—any discretionary consideration compelling the denial of relief under ORS 419B.923(1)(b). Accordingly, in the totality of the circumstances, the trial court erred in denying father's motion under ORS 419B.923(1)(b)."

*Id.* at 142-44.

Here, as in *G. R.*, we discuss first the question of "excusable neglect." Mother addressed the reason for her nonappearance in an affidavit in support of her motion to set aside the default judgment:

"I tried to come to court for the pre-trial hearing. I had written down the appearance for 2:30 in the afternoon. My attorney called me at 8:45 a.m. I spoke with my attorney before the hearing and was unable to get a ride to court for the hearing. I tried to get a ride from Pastor Matt Gass, and also from another church member, Bob Meksch. I also asked Anita, the foster mother, for a ride as she sometimes takes us to court. No one was able to take me. Father's mother, who sometimes takes us to court, was unable to drive us because she had no gas."

Mother contends that, as in *G. R.*, her affidavit demonstrates that her nonappearance was due to a reasonable, uncontroverted, and good faith mistake as to the time of

the pretrial conference: Mother mistakenly wrote down a hearing time of 2:30 p.m. rather than 9:00 a.m. Mother also highlights other circumstances that make this case similar to *G. R.*: Mother had been actively engaged in preparation for trial and she acted immediately upon learning of her mistake by attempting to find a ride to the courthouse. She contends that, considered together, those circumstances constitute excusable neglect.

In the state's view, mother's affidavit does not demonstrate excusable neglect, because it does not explain *why* mother wrote down the incorrect time of 2:30 p.m. for the 9:00 a.m. hearing, when every other hearing in this matter had been scheduled for 9:00 or 9:30 a.m. Here, the state reasons, unlike in *G. R.*, where the father "offered a reasonable, uncontroverted explanation for his mistake," *Id.* at 143, mother offered no plausible basis for her mistake.

In *G. R.*, we highlighted the legislative history of ORS 419B.923(1), specifically the provision regarding "excusable neglect":

> "[T]the legislative history of ORS 419B.923(1) discloses that the legislature, in enacting the statute's 'excusable neglect' provision, was especially concerned with 'horror stor[ies]' of parents having their rights terminated in their absence when, because of good faith mistakes, they went to the wrong courtroom or appeared at the wrong time. *See* Tape Recording, Senate Committee on Judiciary, HB 2611, Apr 30, 2001, Tape 115, Side B (statements of Sen John Minnis and Kathie Osborn, Senior Attorney, The Juvenile Rights Project)."

224 Or App at 141. We said that, given that history, we had "no doubt that the legislature intended 'excusable neglect' in ORS 419B.923(1)(b) to encompass a parent's reasonable, good faith mistake as to the time or place of a dependency proceeding." *Id.* at 141-42. Mother has offered evidence that her failure to appear at the hearing was due to a "reasonable, good faith mistake" as to its time, and that evidence is uncontroverted. Although it is true, as the state contends, that mother did not offer an explanation for *why* she wrote down the incorrect time for the hearing, that does not undermine her explanation that she failed to appear because of a good faith mistake as to the time of the hearing.

In *G. R.*, we concluded that that is the type of mistake that will constitute excusable neglect. Parental rights should not be terminated because of a good faith—if careless—mistake as to the time of a hearing, and we so conclude here. Further, when mother learned of her mistake as to the time, she immediately attempted to find a ride to the courthouse, but was unable to do so. Mother had been actively working with her attorney in preparation for trial and had never missed a court appearance with respect to another child. We conclude that those circumstances constitute excusable neglect under ORS 419B.923(1)(b) as a matter of law.

Further, as in *G. R.*, we conclude that the considerations that the court has identified as relevant to the court's discretion in ruling on a motion to set aside a termination judgment, 224 Or App at 143, militate decisively in mother's favor. First, as in *G. R.*, the rights forfeited by virtue of the default—parental rights—are profound. *Id.* Second, mother moved quickly to set aside the termination judgment—only one day after the court entered the judgment. Third, there is no evidence that any party has relied to its detriment on the termination judgment and no evidence that the child would be harmed by a minimal delay in rescheduling. Additionally, the hearing at which mother failed to appear was a pretrial hearing and not the trial itself. Had mother appeared, the court would not have proceeded with an adjudication at that time, and would not have heard the termination case until 16 days later, when it had been scheduled for trial. Under those circumstances, the juvenile court could have granted mother's motion to set aside the termination judgment "without doing violence to the regular disposition of litigation." *Id.* at 144.

Fourth, as in *G. R.*, mother had been actively working with her attorney in preparation for trial, and both she and another witness were prepared to testify on her behalf. Finally, as in *G. R.*, DHS has not identified or offered any evidence regarding the discretionary considerations that would support denying mother the relief requested under ORS 419.923(1)(b). We conclude for all the reasons discussed that, under the totality of the circumstances, the juvenile court abused its discretion in denying mother's

motion to set aside the judgment terminating her parental rights, and we therefore remand the case with instructions for the juvenile court to set aside the judgment.[1]

Reversed and remanded with instructions to set aside judgment terminating mother's parental rights.

---

[1] Father also failed to appear for the hearing and the court also terminated father's parental rights on a *prima facie* showing. Father also moved to set aside the judgment, his motion was denied, and he has not appealed.