106 February 22, 2024 No. 115

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of C. H.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

K. M.,
*Appellant.*

Multnomah County Circuit Court
22JU04754
Petition Number 114701;
A182182 (Control)

In the Matter of C. H.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

K. M.,
*Appellant.*

Multnomah County Circuit Court 22JU04755
Petition Number 114701;
A182183

Matthew J. Leady, Judge.

Argued and submitted January 12, 2024.

George W. Kelly argued the cause and filed the brief for appellant.

Emily N. Snook, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General; Benjamin Gutman, Solicitor General; and Inge D. Wells, Assistant Attorney General.

Before Tookey, Presiding Judge, Egan, Judge, and Kamins, Judge.

KAMINS, J.

Affirmed.

**KAMINS, J.**

In these consolidated cases, mother appeals the trial court's denial of her motion to set aside a judgment taking jurisdiction over her two children, CA and CO. Mother's assignments of error challenge the trial court's denial of her motion to set aside because she contends that she demonstrated excusable neglect for not attending the hearing. We affirm.

The underlying facts are undisputed. On October 7, 2022, DHS filed a petition for dependency jurisdiction of CA and CO, alleging that mother's "substance use interferes with her ability to safely parent the children," and she "leaves the children with unsafe caregivers." The juvenile court awarded DHS temporary custody of CA and CO, and the children were placed in relative substitute care. DHS amended its petition in February 2023, alleging that mother's "mental health problems interfere with her ability to safely parent" CA and CO. A rescheduling call was ordered to take place on March 16, 2023, and mother was 30 minutes late for that March 16 call. Additionally, on that call, the juvenile court scheduled a call for April 20, 2023.

Mother failed to appear at the April 20 call. Mother's attorney "alerted" the trial court that mother is often late. Nevertheless, the juvenile court recalled the case approximately 15 minutes later and allowed the government to proceed with its *prima facie* case. The juvenile court ordered the children to the legal custody of DHS, with continued placement in relative substitute care. Additionally, the judgment ordered that the "[c]hildren may be returned to a parent with a safety plan and the agreement of child's attorney and CASA." At the conclusion of that hearing, which was approximately 40 minutes after its scheduled time to begin, mother's attorney and the DHS caseworker saw mother outside the courtroom.

On April 26, 2023, mother filed a motion to set aside the judgment pursuant to ORS 419B.923(1)(b), which authorizes a juvenile court to set aside its orders and judgments on the grounds of "excusable neglect." Mother did not appear at the beginning of the hearing on her motion, and her counsel

argued that, because of mother's modest means, she often relies on public transportation, which causes her lateness. However, as DHS argued at the hearing, mother presented no evidence that her lateness was due to public transportation or her economic status. The juvenile court ruled "that there isn't evidence of excusable neglect" and commented the "sad irony is that [mother] is late today." It further contemplated that its ruling "might even be a little bit different if it were a termination judgment." Mother finally arrived approximately seven minutes after the court made its ruling. She and the trial judge had a candid exchange, which included the following:

> "I had you come back in the courtroom not because I wanted you to feel bad, not because I wanted to shame you or anything other than I wanted you to feel like the process, this system is listening to you, even if the system isn't giving you the exact answers that you're hoping for. * * * My decision today doesn't—in any real effect, it doesn't change anything. * * * Because the court orders is that [CA] and [CO] can come home to you when there's a written safety plan and the agreement of child's attorney and CASA."

A party's failure to appear at a juvenile dependency hearing may qualify as excusable neglect under certain circumstances. "Whether facts establish excusable neglect for the purposes of ORS 419B.932(1)(b) presents a question of law, making our review for legal error." *Dept. of Human Services v. J. J. J.*, 317 Or App 188, 190, 504 P3d 683 (2022). "Evaluating a motion to set aside a judgment under ORS 419B.923(1)(b) entails a two-step process." *Id.* First, the court "must determine whether the parent has established excusable neglect." *Id.* Second, if the court "determines that a parent has established excusable neglect, it must then decide whether to exercise its discretion to grant the motion to set aside." *Id.* We "are bound by the trial court's factual findings, if supported by evidence in the record." *Dept. of Human Services v. A. L. S.*, 318 Or App 665, 666, 508 P3d 79 (2022).

Similar to the "excusable neglect" standard for setting aside a judgment under ORCP 71, the standard under ORS 419B.923 "requires a showing that there are reasonable grounds to excuse the default." *J. J. J.*, 317 Or App

at 190-91. Under 419B.923(1)(b), excusable neglect can be "a parent's reasonable, good faith mistake as to the time or place of a dependency proceeding." *State ex rel Dept. of Human Services v. G. R.*, 224 Or App 133, 141-42, 197 P3d 61 (2008). Although that standard, at least in the context of a termination of parental rights hearing, "must be construed liberally in favor a parent's fundamental interest," a parent must present facts to the juvenile court to establish reasonable grounds for their failure to appear.[1] *J. J. J.*, 317 Or App at 190-91. For instance, in *G. R.*, 224 Or App at 143, we found that despite the father's nonappearance, he established excusable neglect because he submitted an "uncontroverted explanation" that he "inadvertently confused the 11:00 a.m. starting time for the pretrial status conference with the 9:00 a.m. starting time for the trial," and he immediately attempted to rectify that mistake. Similarly in *Dept. of Human Services v. K. M. P.*, 251 Or App 268, 276, 284 P3d 519 (2012), we held that the mother's uncontroverted evidence—that she incorrectly wrote down the wrong time of the hearing, she "had never missed a court appearance with respect to another child," and after learning of her mistake, "she immediately attempted to find a ride to the courthouse"—constituted excusable neglect.

On appeal, mother renews her argument that her nonappearance for the dependency hearing was excused by her habitual lateness combined with the alleged failure of court personnel in directing her to the correct courtroom. We agree with the juvenile court that mother has failed to demonstrate excusable neglect as a matter of law. While we are sympathetic to mother's financial circumstances as argued by counsel, there is no evidence in the record of those circumstances, or evidence connecting her tardiness to her finances, difficulties with public transportation, or the court personnel's purported errors. According to mother's counsel's declaration, mother had been properly served; she had contacted her caseworker the morning of the

---

[1] We have not previously determined how (or whether) the liberal construction of that standard applies to set aside the result of a dependency hearing where the plan is reunification with the parent, rather than a judgment for the termination of parental rights. Because we conclude that mother did not demonstrate excusable neglect under any standard, we do not resolve that issue.

April 20 hearing; and her caseworker "understood her to be on her way." Because mother failed to demonstrate a connection between her failure to appear and a reasonable ground for that failure sufficient to establish excusable neglect, the trial court did not err. *Cf. J. J. J.*, 317 Or App at 191 (explaining that the mother, who was homeless, demonstrated excusable neglect, in part, because her nonappearance at the remote trial resulted from "someone she was sharing a hotel room with" turning off her alarm clock, and her lawyer's failure to "alert the court that mother was trying to call in or ask the court to pause the proceedings to allow" her to join).

Affirmed.