Argued and submitted February 7, reversed and remanded June 7, 2017

In the Matter of D. D. D.,
aka B. B. D., a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

J. R. D.,
*Appellant.*

Multnomah County Circuit Court
16JU03467;
Petition Number 111727;
A162808

398 P3d 489

Shannon Storey, Chief Defender, Juvenile Appellate Section, Office of Public Defense Services, argued the cause and filed the brief for appellant.

Inge D. Wells, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F.

Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Sercombe, Presiding Judge, and Hadlock, Chief Judge, and DeHoog, Judge.*

---

* Hadlock, C. J., *vice* Flynn, J. pro tempore.

## SERCOMBE, P. J.

The issue in this juvenile dependency case is whether ORS 419A.150(3) allows a party the opportunity to present new evidence in a judicial rehearing of a referee's determination or whether that evidence can be excluded at the discretion of the juvenile court.[1] Here, when mother failed to appear at a pretrial conference under ORS 419B.815(2)(b) before a juvenile court referee, the referee allowed the Department of Human Services (DHS) to proceed with its *prima facie* case, and the referee entered an order taking jurisdiction of mother's child, D.[2] After the referee entered that order, mother made a timely request for a rehearing before a juvenile court judge under ORS 419A.150, seeking to present additional evidence to rebut DHS's previously proven case. The court "affirmed" the referee's order without affording mother the opportunity to present additional evidence and entered a judgment taking jurisdiction of D. Mother appeals from that judgment, arguing that she was entitled to present additional evidence at the rehearing. DHS responds that the court had discretion to decide whether to allow mother to present additional evidence and it did not

---

[1] ORS 419A.150(3) provides:

"When the referee conducts a hearing, the persons entitled to request rehearing as provided in subsection (7) of this section must be notified of the referee's findings, recommendations or order, together with a notice to the effect that a rehearing may be had before a judge if requested within 10 days. A rehearing before a judge of the juvenile court may be determined on the same evidence introduced before the referee if a stenographic transcript of the proceedings was kept, but, in any case, additional evidence may be presented."

[2] ORS 419B.815 sets out rules for the contents of a summons in a juvenile dependency case and establishes the consequences of failing to appear in response to a summons. In particular, ORS 419B.815(1) requires that the juvenile court serve a "summons and a true copy of the petition" on a parent before entering an order establishing jurisdiction. ORS 419B.815(2) then provides that the summons must require that the parent "(a) * * * appear personally before the court at the time and place specified in the summons for a hearing on the allegations of the petition," "(b) * * * appear personally before the court at the time and place specified in the summons to admit or deny the allegations of the petition," or "(c) * * * file a written answer to the petition within 30 days from the date on which the person is served with the summons." The purpose of the pretrial conference in this case was for mother to "admit or deny the allegations in the petition." Furthermore, ORS 419B.815(7) provides that, "[i]f a person fails to appear for any hearing related to th[e] petition, * * * the court may establish jurisdiction without further notice[.]"

abuse that discretion. We agree with mother and, therefore, reverse and remand.

We begin by briefly reviewing the relevant portions of ORS 419A.150. ORS 419A.150(1) permits juvenile court judges to "appoint one or more persons as referees of the juvenile court." A juvenile court judge may "direct that any case, or all cases of a class designated by the judge, be processed or heard in the first instance by a referee," who then transmits his or her "findings, recommendations or order in writing" to the judge. ORS 419A.150(2). A referee order is "immediately effective, subject to the right of review provided in [ORS 419A.150]." ORS 419A.150(4). After the referee conducts a hearing, certain parties—including "a child, ward, youth, youth offender, the parent, guardian, district attorney, [DHS], juvenile department or other party affected by the order"—are entitled to request a rehearing before a juvenile court judge. ORS 419A.150(3), (7). The court may also order a rehearing on its own motion. ORS 419A.150(6). If no party requests a rehearing within 10 days, then the referee's order becomes "a final order of the juvenile court." ORS 419A.150(4).

If a party requests a rehearing, pursuant to ORS 419A.150(3), "[a] rehearing before a judge of the juvenile court may be determined on the same evidence introduced before the referee if a stenographic transcript of the proceedings was kept, but, in any case, additional evidence may be presented." ORS 419A.150(8) further provides that the "rehearing is conducted de novo."

Here, as noted, DHS petitioned for jurisdiction of mother's child, D. Mother failed to appear for a pretrial conference before a referee. At the pretrial conference, the referee permitted DHS to present its *prima facie* case without mother present. The referee subsequently entered an order taking jurisdiction of D. Mother then made a timely request for a rehearing under ORS 419A.150. She argued that, on rehearing, she was entitled to a full jurisdictional hearing before the court, including the right to present evidence. In response, the state argued that mother had forfeited any right to present evidence by failing to appear. The juvenile court agreed with the state, explaining its reasoning in a letter opinion.

The court first concluded that "there was no reasonable excuse for Mother's absence[.]" Next, the court explained that "[h]ad Mother been at the hearing, she would have had the right to call witnesses (including herself, of course), cross-examine the State's witnesses, and otherwise participate in the hearing." However, "[b]ecause she was not present in person at the hearing, she lost that right." The court further explained that it "d[id] not believe that it was the legislature's intention to allow a parent who failed to appear at the Pretrial Conference and Judicial Settlement Conference to [present evidence] at rehearing."

The court also concluded that, even if mother's failure to appear did not preclude her from presenting evidence, the court could nevertheless deny her request to do so. According to the court, ORS 419A.150(3) "gives the trial court conducting the rehearing the discretion to review the case using the evidence presented at the initial hearing and also gives the trial court discretion to allow the presentation of 'additional evidence.'" The court determined that, "to the extent that I may allow [mother] to produce additional evidence, I elect to not exercise that discretion." As the court explained:

"To exercise my discretion to allow a parent to proceed to adduce testimony at a rehearing of a hearing to which she failed to attend in the first instance would be to vitiate the need to even consider whether an absence was excusable, and would make ORS 419[B].815(7) superfluous. A parent, having missed the hearing as summoned due to her own neglect, could simply seek a second bite at the apple, despite the summons and its dire warnings. That would be unfair to the many parents who are present at their hearings even at great difficulty or inconvenience, and could lead to rehearings simply due to a parent's absence at the hearing to which the parent was summoned originally."

The court then stated that it had "reviewed *de novo* the evidence presented" at the hearing before the referee, and it "affirmed" the referee's order taking jurisdiction over D. The court subsequently entered a judgment consistent with that decision.

On appeal, the parties dispute the scope of the rehearing available under ORS 419A.150. According to mother, the

statute permits a new hearing on the merits of the case, including the right to present evidence. The state responds that the statute allows a party to obtain reconsideration of the referee's decision on the record created by the referee, and that whether new evidence may be presented is at the juvenile court's discretion.

To resolve that issue, we must interpret ORS 419A.150 by examining its text, context, and any relevant legislative history to determine the intent of the legislature. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009); *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). When the text of a statute contains words in common usage, we interpret those words in accordance with their plain, natural, and ordinary meanings. *PGE*, 317 Or at 611. Furthermore, if a term has a "well-defined legal meaning," we presume that the legislature intended for it to carry that meaning. *Dept. of Transportation v. Stallcup*, 341 Or 93, 99, 138 P3d 9 (2006). We may rely on dictionaries to discern the meaning of words in common usage, *State v. Higgins*, 165 Or App 442, 445, 998 P2d 222 (2000), and legal dictionaries for legal terms of art, *Powerex Corp. v. Dept. of Rev.*, 357 Or 40, 61, 346 P3d 476 (2015).

The parties primarily focus on three sections of ORS 419A.150:

"(3)   When the referee conducts a hearing, the persons entitled to request rehearing as provided in subsection (7) of this section must be notified of the referee's findings, recommendations or order, together with a notice to the effect that a rehearing may be had before a judge if requested within 10 days. *A rehearing before a judge of the juvenile court may be determined on the same evidence introduced before the referee if a stenographic transcript of the proceedings was kept, but, in any case, additional evidence may be presented.*

"(4)   *All orders of a referee become immediately effective, subject to the right of review provided in this section,* and continue in full force and effect, unless stayed by order of the referee or by a juvenile court judge, until vacated or modified upon rehearing by order of a judge of the juvenile court. Any order entered by a referee becomes a final order

of the juvenile court upon expiration of 10 days following its entry, unless a rehearing is ordered or requested.

"* * * * *

"(8)  All rehearings of matters heard before a referee shall be heard expeditiously by a judge of the juvenile court within 30 days after the filing of the request, unless the court orders a continuance. In no event may the rehearing occur later than 45 days after the date of the filing of the request. *The rehearing is conducted de novo.*"

(Emphases added.)

To start, we address the juvenile court's conclusion in its letter opinion that a litigant who failed to appear before a referee is barred from presenting evidence at a rehearing. The text and context of ORS 419A.150 do not support that conclusion. ORS 419A.150 does not make any distinctions between appearing and nonappearing parties. The statute extends the right to "request rehearing" to several classes of litigants, including "a child, ward, * * *, the parent, guardian, district attorney, [DHS], juvenile department or other party affected by the order" without regard to their participation in the hearing before the referee. ORS 419A.150(7). Nor is there anything in the statute to suggest that ORS 419A.150(3), providing that "additional evidence may be presented," is limited to parties who appeared before the referee.

In its letter opinion, the court relied in part on ORS 419B.815(7). ORS 419B.815(7) allows for a juvenile court to "establish jurisdiction without further notice" if a party fails to appear for "any hearing related to the petition," as the referee did at the pretrial conference in this case, or as a rehearing court might do if a party fails to appear at a rehearing. The statute, however, is silent as to any limitations on the scope of a rehearing under ORS 419A.150 if a party failed to appear at a hearing before a referee, and it is not useful context for discerning the meaning of ORS 419A.150.

For its part, DHS does not defend that portion of the juvenile court's ruling. Rather, as noted, DHS contends that we should interpret the statute to grant the juvenile court

discretion to allow or deny the parties the opportunity to present additional evidence. That position, however, also is not supported by the text and context of the statute.

Again, ORS 419A.150(3) provides that "[a] rehearing before a judge of the juvenile court may be determined on the same evidence introduced before the referee if a stenographic transcript of the proceedings was kept, but, in any case, additional evidence may be presented." DHS argues that the second use of the word "may" in that sentence grants discretion to the juvenile court to deny a party the opportunity to present additional evidence. We disagree and conclude that the phrase "additional evidence may be presented" unambiguously provides litigants with permission to present new evidence.

In other contexts, the use of the passive voice ("may be presented") might create ambiguity as to the subject of a sentence (*i.e.*, the identity of the actor who may present evidence). *See Alfieri v. Solomon*, 358 Or 383, 399-400, 365 P3d 99 (2015) (explaining that, depending on the context, the passive voice might "convey[] [the legislature's] intent that a statute apply more broadly" but also might simply "generate[] ambiguity as to how the law should be applied"); *Brentmar v. Jackson County*, 321 Or 481, 487, 900 P2d 1030 (1995) (concluding that the legislature's use of the passive voice created an ambiguity as to the identity of the subject who was permitted to act as provided by the statute). Here, however, there is no ambiguity. Instead, the implicit subject of the sentence is clear from context: Litigants, not courts, "present" evidence—and, thus, litigants may act under the statute to present additional evidence to the court.

In this context, the word "may," which is a word in common usage, means "have permission to" or "have liberty to." *Webster's Third New Int'l Dictionary* 1396 (unabridged ed 2002). Thus, if additional evidence "may be presented" by litigants, then they "have permission" to present such evidence. ORS 419A.150(3) plainly grants litigants permission to offer additional evidence on rehearing.

DHS contends that the statement in ORS 419A.150(3) that a rehearing "may be determined on the same evidence

introduced before the referee if a stenographic transcript of the proceedings was kept" indicates that the court need not permit a party to present new evidence. However, as discussed above, the remaining portion of that sentence provides that, "in any case, additional evidence may be presented." The statute therefore *permits* parties to present new evidence; however, it does not to *require* them to do so. Thus, the former clause allows a court to make a decision on rehearing on the record before the referee if a transcript is available and the parties choose not to present any additional evidence.

The parties also dispute the significance of two other terms in ORS 419A.150—the use of "rehearing" to label the procedure provided by the statute and the description of the standard of review for that rehearing as "de novo" in ORS 419A.150(8). In a different context, the legislature's use of those terms might generate ambiguity. "Rehearing" can mean either a "[s]econd consideration of [a] cause for [the] sole purpose of calling to [the] court's attention any error, omission, or oversight in [the] first consideration" or "[a] retrial of issues" with "notice to [the] parties entitled thereto and [an] opportunity for them to be heard." *Black's Law Dictionary* 1452 (4th ed 1968). Similarly, "de novo," which means "anew," "afresh," or "a second time," often refers to an entirely new hearing "in the same manner in which [the] matter was originally heard." *Black's* at 483, 852; *see also State v. Knighten*, 236 Or 634, 637, 390 P2d 166 (1964) (explaining that, under ORS 53.090, "[u]pon appeal from the municipal court" to a circuit court, "the cause is tried de novo as if originally commenced in such court" (internal quotation marks omitted)). On the other hand, "de novo" review can also refer to a review of a matter on the record created in the prior tribunal, but without deference to that tribunal's factual determinations. *See Hannan v. Good Samaritan Hosp.*, 4 Or App 178, 187, 471 P2d 831, *adh'd to on reh'g*, 4 Or App 199, 476 P2d 931 (1970) (when an appellate court conducts "de novo review" of a trial court's decision in equity, it reviews the decision based on the record created in the trial court, but gives the trial court's factual findings no weight, except those related to the credibility of witnesses). Thus, in the abstract, the legislature's use of those terms

could support either party's interpretation of ORS 419A.150. However, because ORS 419A.150(3) unambiguously grants litigants permission to present additional evidence, those terms indicate that the rehearing under ORS 419A.150 is a rehearing of the matter before the referee as if it had been originally commenced before the juvenile court.

Finally, DHS argues that there is tension between our interpretation of the statute and the legislature's use of the phrase "right of review" in ORS 419A.150(4). *See Black's* at 1483 (defining "review" as "[t]o reexamine judicially. A reconsideration; second view or examination; revision; consideration for purposes of correction. Used especially of the examination of a cause by an appellate court."). However, DHS's reading, which would place the litigants' opportunity to present evidence at the juvenile court's discretion, cannot be squared with the plain text of ORS 419A.150(3). Furthermore, ORS 419A.150(4) refers to "the right of review *provided in this section.*" (Emphasis added.) Thus, in context, the "right of review provided in" ORS 419A.150 is a rehearing that includes the opportunity to present additional evidence.[3]

We recognize the importance of the juvenile court's concern that nonappearing litigants might exploit the ORS 419A.150 rehearing procedure to receive a "second bite at the apple," as well as DHS's concerns about the "state's limited resources, the circuit courts' overcrowded dockets, and the need for prompt resolution of juvenile dependency proceedings." Those public policy arguments may inspire the legislature to change the text of ORS 419A.150. They do not persuade us that the existing text of the statute means something different than its plain meaning.

Accordingly, we conclude that, pursuant to ORS 419A.150, a party to a rehearing of a referee's decision may present additional evidence during that rehearing before the juvenile court. The juvenile court therefore erred in denying mother the opportunity to present additional evidence.

Reversed and remanded.

---

[3] We have also reviewed the legislative history provided by DHS, and it does not alter our conclusion.

**DEHOOG, J.,** concurring.

In this case, DHS served mother with a juvenile dependency petition and a summons requiring her to personally appear in court on June 6, 2016, at 10:45 a.m., to admit or deny the allegations of the petition. As ORS 419B.815(4) requires, the summons told mother that "appear[ing] personally" did not mean having her attorney appear for her,[1] and that, if she failed to appear in person as required, "the court may establish jurisdiction without further notice either on the date specified in the summons" or on some later date.[2]

Mother did not appear personally as required. Instead, at approximately 11:10 a.m., she left a voicemail message for her court-appointed attorney, explaining that her car had run out of gas approximately seven miles from the location of the hearing.[3] When the juvenile referee called mother's case at approximately 11:30 a.m., mother's attorney conveyed that message to the referee. Counsel also returned mother's call, after which he told the referee that mother had confirmed her voicemail and was asking to appear by phone. The referee evidently denied that request for a telephonic appearance. Instead, after noting that he did not find mother to be particularly credible and that he

---

[1] In addition to other information, ORS 419B.815(4)(d) requires a summons to include

"[a] statement that, if the person is represented by an attorney, the person must appear personally at any hearing where the person is required to appear[.] * * * The statement must explain that 'appear personally' does not include appearance through the person's attorney."

[2] ORS 419B.815(4)(a) requires the summons to contain

"[a] statement that the petition seeks to establish jurisdiction under ORS 419B.100 and that, *if the person fails to appear at the time and place specified in the summons* or an order under ORS 419B.816 or, if the summons requires the filing of a written answer, fails to file the answer within the time provided, *the court may establish jurisdiction without further notice either on the date specified in the summons* or order or on a future date, and may take any other action that is authorized by law including, but not limited to, making the child a ward of the court and removing the child from the legal and physical custody of the parent or other person having legal or physical custody of the child."

(Emphases added.)

[3] Mother's voicemail message apparently indicated that she had run out of gas on or near the St. Johns Bridge. In its written account of the proceedings before the referee, the juvenile court took judicial notice that the St. Johns Bridge is "less than seven miles distant from the Juvenile Justice Center" where mother was required to appear.

did not consider the explanation for her absence adequate, the referee proceeded to hear DHS's *prima facie* case and took jurisdiction on behalf of the juvenile court.

In electing to proceed in that manner, the referee told mother's attorney that he would entertain a motion to set aside the order establishing jurisdiction if mother were later able to demonstrate that her absence was excusable. However, mother did not seek to have the referee set aside his order; instead, relying on ORS 419A.150, mother requested trial *de novo* before the juvenile court.

The majority now concludes that, at least to the extent that a juvenile court conducts a rehearing under that statute, the court must rehear the matter *de novo*, ORS 419A.150(8), which, in light of ORS 419A.150(3), means that the court must conduct a hearing in which the parties are permitted to present evidence in addition to any record that may have been created before the referee. Understood in that limited fashion, I agree with the majority opinion and, for the most part, its rationale. I write separately, however, to emphasize two considerations that the majority does not clearly address.

First, in my view, the majority opinion should not be read as holding that the juvenile court could not have denied mother's request for a hearing altogether, as opposed to limiting the scope of the hearing that it held. As the majority explains, the juvenile court relied on two, ultimately faulty, rationales for limiting the rehearing to the record created before the referee. One rationale was that, in the juvenile court's view, it was unlikely that the legislature intended for a parent who missed a required hearing before a referee to get a "second bite at the apple" by having an opportunity to present new evidence at a rehearing.[4] The other rationale

---

[4] Parenthetically, I respectfully note that that expressed concern—and the majority's implicit endorsement of that concern as a matter of policy that the legislature might want to consider—slightly mischaracterizes the problem that is caused when parents treat a referee hearing as optional. That is because, in my view, *the very purpose of* ORS 419A.150's rehearing provisions is to give parties who are dissatisfied with a juvenile referee's decision "a second bite at the apple" by having the juvenile court hear the matter anew. Thus, the concern is not that resources will be wasted if parties are allowed two evidentiary hearings; the concern is that referee hearings will become meaningless (and incredibly wasteful) exercises if there is no consequence for a party who fails to appear.

was that ORS 419A.150 gave the juvenile court discretion to decide the scope of a rehearing despite its provision for a trial *de novo*; in this case, the court concluded that mother's unjustified failure to appear warranted denying her the opportunity to present additional evidence.

Notably, however, the juvenile court did not consider whether it could deny mother's request for a hearing altogether, nor does DHS advance that possibility on appeal. Thus, to the extent that the majority opinion suggests that the juvenile court could *not* deny mother's request for a rehearing in its entirety, mother's appeal does not present that issue for us to decide. As a result, I do not consider the majority opinion's discussion of ORS 419A.150(7)—and that statute's failure to distinguish between parties who appear or do not appear before the referee—as necessarily concluding that a party's unexcused failure to comply with a summons is never a default and, thus, a forfeiture of the right to a rehearing before the juvenile court.

Indeed, it is certainly not beyond dispute that mother's unexcused absence could be deemed such a forfeiture. Unlike, for example, ORS 36.400 to 36.425, the statutes governing mandatory arbitration, here, ORS 419A.150 and its statutory context suggest that a sanction *is* available when a party fails to participate in a mandatory proceeding. To illustrate that point, in *Monroe v. Harmon*, 158 Or App 196, 198, 973 P2d 392, *rev den*, 329 Or 126 (1999), we held that, under ORS 36.425, a party who failed to participate in mandatory court-annexed arbitration retained an absolute right to have the matter heard *de novo* in the trial court. We acknowledged that, in at least some cases, if "parties suffer[ed] no detriment for their failure to participate [in arbitration, they could] subvert the purposes of the arbitration system by simply not participating." *Id.* at 201. Nonetheless, given the absence of any statute or rule allowing the court to penalize a party's failure to participate, we held that the trial court had no authority to dismiss that party's appeal. *Id.* at 202-03; *see Treverton v. Arnold*, 118 Or App 461, 465, 847 P2d 914 (1993) (reaching the same conclusion and acknowledging the legislature's apparent decision to allow parties to thwart "mandatory" arbitration provisions).

In contrast, under the juvenile code, an unjustified failure to participate *does* have consequences. *See Dept. of Human Services v. S. C. T.,* 281 Or App 246, 256-57, 380 P3d 1211 (2016), *rev den,* 360 Or 851 (2017) (so stating after examination of text and legislative history of ORS 419B.815(7) and (8)). As noted, DHS was required to inform mother through its summons that "if [she] fail[ed] to appear at the time and place specified in the summons * * * the court [could] establish jurisdiction without further notice either on the date specified in the summons or order or on a future date[.]" ORS 419B.815(4)(a). And, in fact, ORS 419B.815(7) expressly allows a juvenile court to take just that action when a person fails to appear as required "for any hearing related to the petition."[5] Thus, even though ORS 419A.150 does not expressly provide for sanctions in connection with the juvenile referee program, it cannot be said that the hearing that mother missed was not a "hearing related to the petition," ORS 419B.815(7).

I recognize that it is one thing to authorize a court to hold a hearing without further notice, on the one hand, and, on the other hand, to deny a hearing altogether. But the availability of arguments for and against forfeiture is what counsels against reading the majority opinion to have decided the issue. Those potential arguments also bring me, finally, to my second concern. That is, if, in fact, ORS 419A.150 can be read to afford a party an absolute right to trial *de novo,* regardless of whether that party disregards a properly issued and served summons to appear before a juvenile referee, then well-established referee programs such as that in Multnomah County could be ground to a halt.

In this case, arranging for and conducting the hearing that took place before the referee undoubtedly consumed

---

[5] ORS 419B.815(7) provides:

"*If a person fails to appear for any hearing related to the petition,* or fails to file a written answer, as directed by summons or court order under this section or ORS 419B.816, *the court may establish jurisdiction without further notice,* either on the date specified in the summons or order or on a future date, and may take any other action that is authorized by law including, but not limited to, making the child a ward of the court and removing the child from the legal and physical custody of the parent or other person having legal or physical custody of the child."

(Emphases added.)

considerable quasi-judicial, attorney, and child-welfare resources. In other cases, one can readily envision a parent who appears as required to enter a denial, but who then fails, without explanation, to appear at a subsequent trial before a referee. In such a case, there would be at least the same—and likely much greater—consumption of limited resources, as well as the very human toll of requiring family members, foster parents, court-appointed advocates, and possibly even the child or children at issue, to attend and participate in an ultimately fruitless exercise. While that duplication of effort may well be worthwhile if a parent attends the first hearing as is ostensibly required, it seems unlikely to me that the legislature would want to see such efforts expended on parties who are simply unwilling to participate in the referee process.

Finally, I am cognizant of the critical interests at stake when the state intervenes in a family and contemplates removing a child from his or her parents' care, and do not intend to suggest that the protection of those interests should in any way be curtailed.[6] I write only to caution against an interpretation of the law that could have widespread, unintended, and ultimately harmful effects on the state's efforts to protect families and children.

Accordingly, I respectfully concur.

---

[6] On a related note, I express no opinion on whether the justification that mother offered for not being personally present—together with her availability to attend telephonically—warranted some degree of accommodation either by the referee or the juvenile court.