294 October 2, 2024 No. 693

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of K.S.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

M. A. T.,
*Appellant.*

Multnomah County Circuit Court
20JU03829;
Petition Number 114102;
A182963 (Control)

In the Matter of W. S.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

M. A. T.,
*Appellant.*

Multnomah County Circuit Court
20JU03830;
Petition Number 114102;
A182964

In the Matter of G. S.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*
*and*

G. S.,
*Respondent,*

*v.*

M. A. T.,
*Appellant.*

Multnomah County Circuit Court

20JU03831;
Petition Number 114102;
A182965

In the Matter of T. S.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*and*

T. S.,
*Respondent,*

*v.*

M. A. T.,
*Appellant.*

Multnomah County Circuit Court
20JU03832;
Petition Number 114102;
A182966

In the Matter of C. S.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

M. A. T.,
*Appellant.*

Multnomah County Circuit Court
20JU03833;
Petition Number 114102;
A182967

In the Matter of D. S.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

M. A. T.,
*Appellant.*

Multnomah County Circuit Court

20JU03834;
Petition Number 114102;
A182968

In the Matter of T. S.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

M. A. T.,
*Appellant.*

Multnomah County Circuit Court
20JU03835;
Petition Number 114102;
A182969

Francis G. Troy, II, Judge.

Argued and submitted June 26, 2024.

Elena C. Stross, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Shannon Storey, Chief Defender, Juvenile Appellate Section, Oregon Public Defense Commission.

Emily N. Snook, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, Powers, Judge, and Hellman, Judge.

POWERS, J.

Affirmed.

**POWERS, J.**

In this consolidated juvenile dependency case, mother appeals from judgments changing the permanency plans away from reunification for seven children. Advancing 14 assignments of error, mother argues that the juvenile court erred in determining that the Department of Human Services (DHS) made reasonable efforts to ameliorate the jurisdictional bases and make it possible for the children to safely return to her care. Specifically, mother contends that the court erred because there was no evidence related to DHS's efforts after the referee hearing and up through the final permanency judgments following the juvenile court's rehearing. As explained below, we conclude that, because the parties agreed that the juvenile court would consider only the evidence presented to the referee to make its decision on rehearing—thereby limiting the timeframe of the rehearing—any error by the juvenile court in failing to consider DHS's efforts following the referee hearing was invited by mother. Further, mother's arguments on appeal do not convince us that the juvenile court erred in changing the permanency plans away from reunification. Accordingly, we affirm.

The relevant facts are undisputed and primarily procedural. In October 2020, the juvenile court first asserted jurisdiction over mother's 10 children. Over the course of the case, some of the children had been returned to mother's and father's care but were later removed again.[1] After a permanency hearing that took place over the course of several months from January to May 2023, the referee entered a single order in June 2023 changing the permanency plans away from reunification for nine of the 10 children.[2] Mother then moved for a rehearing under ORS 419A.150 in front of a juvenile court judge challenging the referee's order.

---

[1] Father is not a party to this appeal.

[2] During the proceedings before the referee, mother moved to dismiss jurisdiction over all 10 children, and the referee issued an order denying the motion to dismiss jurisdiction over nine of the 10 children. On rehearing, the juvenile court upheld the order denying the motion to dismiss. Mother appealed the denial of the motion to dismiss as to seven of the children, and we affirmed the juvenile court's denial of the motion to dismiss. *Dept. of Human Services v. M. A. T.*, 334 Or App 292 (2024) (nonprecedential memorandum opinion).

        In July 2023, following mother's rehearing motion, the parties discussed with the juvenile court how to proceed with the rehearing. DHS explained that the parties intended for the court to consider the testimony and exhibits from the permanency hearings before the referee and that no party intended to put on additional evidence. Mother agreed that the court was to consider only the evidence from the permanency hearings, explaining:

> "Pretty much everything that is on the record and before the Court was pretty thoroughly argued. Case law cited and everything there. I don't anticipate there being anything in addition to that but—to be presented.

> "So this is essentially rehearing on the record to review. And then determine whether the conclusions of law and findings of fact, with respect to both of the segments of the case, were decided correctly."

The juvenile court asked mother what "*de novo*" review means under ORS 419A.150(8), which requires a rehearing to be "conducted *de novo*," and mother responded that "this court will be reviewing the evidence and making a determination based on the evidence." Mother added, "I believe it's possible to relitigate based on stipulated evidence and the exhibits. I would—I would anticipate that what would be presented would be as was previously presented."

        At a status check hearing in August 2023, the parties discussed the status of the transcript and exhibits from the referee hearings, and no party offered any additional evidence or made arguments. Thus, no party presented any new evidence before the juvenile court as part of the rehearing.

        In the judgments that were signed on October 27 and entered on November 6, 2023, the juvenile court upheld the referee's ruling and issued judgments changing the children's permanency plans away from reunification. In making its ruling, the court noted that it reviewed the transcript and exhibits from the hearings before the referee.

        On appeal, mother argues that the juvenile court erred in ruling that DHS's efforts to reunify her with her children qualified as reasonable and in changing the

permanency plans away from reunification for seven of her children. In arguing that DHS's efforts were not reasonable, mother contends that between January and November 2023—the period of time from when the referee hearing began to when the juvenile court entered its judgments on rehearing—DHS made little to no efforts to assist mother in ameliorating the jurisdictional bases. Moreover, mother asserts that DHS's choice not to present any evidence at the rehearing prevented the juvenile court from concluding that DHS's efforts qualified as reasonable because there was no evidence that DHS made any efforts to assist the parents in the six months between the conclusion of the referee hearing in May 2023 and the entry of the permanency judgments in November 2023.[3]

DHS remonstrates that, to the extent mother argues that the court could not have found reasonable efforts because of the lack of evidence of DHS's efforts between May and November 2023, mother invited that error because she agreed that the juvenile court was to consider only the evidence from the referee hearing at the rehearing. Two of mother's children filed a joint respondents' brief in this appeal adopting DHS's answering brief in full.

As explained below, we reject mother's reasonable-efforts argument because any error caused by the juvenile court's failure to consider DHS's efforts following the hearing by the referee was invited by mother. Further, mother has not demonstrated that the juvenile court erred in changing the permanency plans for her children away from reunification. Accordingly, we affirm.

When a party moves to change a child's permanency plan away from reunification, the juvenile court must determine whether DHS "has made reasonable efforts *** and whether the parent has made sufficient progress to make it possible for the ward to safely return home." ORS 419B.476(2)(a). It is DHS's burden to prove that it made reasonable efforts "over the life of the case." *Dept. of Human Services v. S. S.*,

---

[3] Throughout the course of the case, there were several delays between the first permanency hearing in front of the referee in January 2023 and when the final permanency judgments were entered 11 months later in November 2023. The cause of those delays or the court's compliance with ORS 419A.150(8) is not at issue in this appeal.

278 Or App 725, 735, 375 P3d 556 (2016) (internal quotation marks and brackets omitted). Because mother's challenge involves a rehearing under ORS 419A.150, we begin by briefly outlining the statutory framework for when a party requests a rehearing in front of a juvenile judge.

Under ORS 419A.150(1), juvenile court judges "may appoint one or more persons as [a] referee of the juvenile court." A juvenile court judge may direct a case or class of cases to be "processed or heard in the first instance by a referee," who then transmits findings, recommendations, or an order to the juvenile court judge. ORS 419A.150(2). A referee's order is "immediately effective, subject to the right of review" described in ORS 419A.150(4) or to a rehearing on the juvenile judge's own motion under ORS 419A.150(6). A referee's order becomes a final order of the juvenile court "upon expiration of 10 days following its entry, unless a rehearing is ordered or requested." ORS 419A.150(4).

ORS 419A.150(7) specifies that "a child, ward, youth, adjudicated youth, the parent, guardian, district attorney, Department of Human Services, juvenile department or other party affected by the order" may request a rehearing of a referee's order. The statutory framework provides for an expedited timeline, requiring that a rehearing occur within 30 days after the filing of the request and in no event later than 45 days after the filing of the request. ORS 419A.150(8).

Important to this case, the statutory framework for a rehearing does not specify the contents of the record that the court must consider on rehearing; rather, the parties play an integral role in identifying the scope of the record that the juvenile court should consider for a rehearing. Specifically, the framework provides that a rehearing "may be determined on the same evidence introduced before the referee if a stenographic transcript of the proceedings was kept, but, in any case, additional evidence may be presented." ORS 419A.150(3); *see also Dept. of Human Services v. J. R. D.*, 286 Or App 55, 62-63, 398 P3d 489 (2017) (concluding that the phrase "may be presented" in ORS 419A.150(3) means litigants have permission to present evidence but are not required to do so). We explained in *J. R. D.* that the

statutory framework "allows a court to make a decision on rehearing on the record before the referee if a transcript is available and the parties choose not to present any additional evidence." 286 Or App at 63.

In short, the statutory framework allows a juvenile court to conduct a rehearing based solely on the evidence received by the referee if the parties choose not to offer any additional evidence on rehearing. Although this case differs from a typical rehearing case because there were delays that resulted in the final permanency judgments occurring 11 months after the initial referee hearing began, the scope of the record on rehearing was not affected by that delay. Thus, although there is no evidence of DHS's efforts between the end of the hearing before the referee and the juvenile court's final permanency judgments, the gap in the evidence was invited by mother and thus does not provide a basis for reversal.

It is axiomatic that a party on appeal cannot take a position inconsistent with the position that party invited the trial court to take. *See, e.g.*, *State v. Kammeyer*, 226 Or App 210, 214, 203 P3d 274, *rev den*, 346 Or 590 (2009) (explaining that the goal of the doctrine of invited error is "to ensure that parties who make intentional or strategic trial choices do not later blame the court if those choices prove to be unwise" (internal quotation marks omitted)). For example, in *State v. Ferguson*, 201 Or App 261, 269-70, 119 P3d 794 (2005), *rev den*, 340 Or 34 (2006), we explained that, if a party was actively instrumental in bringing about an asserted error, that party cannot complain about that error on appeal. The invited error doctrine ordinarily applies in cases where a party "has invited the trial court to rule in a particular way, under circumstances that suggest that the party will be bound by the ruling or at least will not later seek a reversal on the basis of it." *Id.* at 270. Moreover, even if a party's invitation to the court to rule a particular way involves a misstatement of the law, the party's statements constitute invited error. *State v. K. K. V.*, 306 Or App 644, 645, 475 P3d 118 (2020).

In this case, both parties agreed that the juvenile court would consider only the record before the referee and

that neither party would present additional evidence or arguments. The rehearing began in July 2023, and a status check occurred in August 2023. Both hearings presented an opportunity for mother to present additional evidence or to argue that DHS had not made reasonable efforts since the referee hearing, and mother chose not to do so. In fact, mother explained that she anticipated that any new evidence presented at the rehearing "would be as was previously presented" and that the juvenile court's role on rehearing was to "determine whether the conclusions of law and findings of fact [made by the referee], with respect to both of the segments of the case, were decided correctly." Given those circumstances, we readily conclude that mother was instrumental in limiting the timeframe for the rehearing to the same timeframe considered by the referee.

Mother contends on appeal that, because DHS had the burden to prove reasonable efforts, DHS was required to demonstrate that it made reasonable efforts in the period following the referee hearing, and mother at no point agreed that DHS's efforts were reasonable. She asserts that DHS chose not to offer additional evidence and that she had no obligation to instruct DHS to make its case against her. Although we agree that mother had no obligation to instruct DHS to make its case, mother's argument on appeal fails to account for her role in limiting the timeframe for the juvenile court to consider on rehearing. If mother did not want to limit the timeframe to the same one the referee considered, she could have clearly articulated her intentions to the juvenile court that she was asking for the rehearing to include circumstances beyond what was considered by the referee. Here, however, she did not do so. Because the statute provides that the juvenile court may consider only the evidence from the referee hearings and because the parties agreed not to present additional evidence or arguments, any claim of error that the juvenile court failed to account for DHS's efforts beyond the agreed-upon timeframe was invited error. This case serves as a cautionary tale that, in the future, it would behoove the parties and the juvenile court to be explicit about what time period the court should consider when conducting a rehearing.

Finally, we reject mother's arguments that the juvenile court erred in changing the permanency plans away from reunification for seven of her children. We have reviewed the record and conclude that, under the totality of the circumstances, there was sufficient evidence for the juvenile court to conclude that DHS's efforts were reasonable from October 2020 through May 2023. Accordingly, the juvenile court did not err.

Affirmed.