DEHOOG, P. J.
*260 Mother appeals judgments terminating her parental rights to her two children, C and G. The juvenile court terminated mother's parental rights following a prima facie showing of grounds to terminate, which the court permitted the Department of Human Services (DHS) to present when mother failed to personally appear at a pretrial settlement conference as directed. Mother raises three assignments of error; we discuss only the first and second assignments.[1] In *786 her first assignment of error, mother argues that the juvenile court erred when it refused to permit her to appear telephonically at the settlement conference. In her second assignment of error, mother contends that the court abused its discretion by proceeding to hold a prima facie trial, thereby terminating mother's parental rights in her absence pursuant to ORS 419B.819(7)(a). For the reasons that follow, we conclude that the juvenile court abused its discretion by proceeding with a prima facie trial. Accordingly, we reverse and remand.
The facts material to mother's appeal are procedural and largely undisputed. In March 2015, the juvenile court took jurisdiction as to C, who was born in September 2014. Following G's birth in September 2015, DHS filed a dependency petition, and, in February 2016, the court took jurisdiction as to him.[2] In December 2016, the court held a permanency hearing; as a result, the court changed the permanency plan as to both children from reunification to adoption. Shortly thereafter, DHS petitioned the court to terminate mother's parental rights to C and G.
DHS served mother with the petition and summons, and, on May 10, 2017, mother appeared in court in *261 response. At that time, the juvenile court appointed counsel for mother. The court also issued an "Order to Appear at Settlement Conference and Trial." Mother signed the order, acknowledging its receipt. The order established a settlement conference date of July 14, 2017, and trial dates of September 9 and 10, 2017. The court's order included a text box setting out the following notice in boldfaced type:
"Notice: You must appear personally in the court-room on the dates & at the times listed above. An attorney may appear with you, but not in place of you. If you fail to appear, the court may terminate your parental rights without further notice. "
(Underscoring, boldface, and emphasis in original; capitalization omitted.) See ORS 419B.820(5)(a) (requiring juvenile court to provide parent with written order including that notice). The order further told mother the name of her appointed attorney, directed mother to maintain contact with him, and gave her the following instructions regarding future court appearances:
"If you show good cause, such as incarceration, ORS 419B.918 allows the judge to give you permission to appear by telephone or other electronic means instead of being physically present. It is your responsibility to make arrangements with the jail/prison and to call the court no later than the day BEFORE the settlement conference or trial to ask permission to appear by telephone."
(Capitalization in original.)
Mother did not appear at the July 14 settlement conference as directed.[3] Initially, the juvenile court seemed prepared to allow mother to appear by telephone; after confirming that Kochlacs, mother's appointed attorney, had her phone number, the court asked to "get her on the phone." However, the children's attorney, Waliser, objected, noting that mother had received notice of her obligation to appear in person and that there had been no motion to allow a telephonic appearance. DHS's attorney, Kuhn, joined Waliser's *262 objection and began to argue the merits of moving forward with a prima facie trial. Focusing first on the telephonic appearance issue, the court stated:
"Wait, we'll address the telephonic. If Mr. Waliser opposes it then I'm not going *787 to allow telephonic appearance today because the parties have to agree to that. So, you can go on with just regards to the prima facie . I assume * * * that's what you're doing right now."
Kuhn responded, "Correct," prompting mother's attorney to explain:
"Just-[mother] called yesterday asking to appear[ ] by phone; I called Ms. Kuhn about it and she said she objected. There really wasn't time to file a motion. I'm requesting that she be allowed to appear by phone now. The reason being, she's told me that she was living in Medford, she became homeless, went over to Klamath Falls, [and] has no transportation over here for today's hearing."
The juvenile court asked Kochlacs whether mother had told him when she went to Klamath Falls; Kochlacs responded, "Two weeks ago." The court then confirmed that mother had called Kochlacs just the previous day. In response, Kuhn volunteered that mother had requested "vouchers to get over here for visits, but nothing about, 'Hey, can you also help me get to court?' "[4] Kuhn again argued the merits of proceeding to termination, stating:
"I mean, if they can't appear in court when it could sever their parental rights, how are they able to parent? It just goes towards that ability and capacity to parent. If she's homeless and can't get here, how is she going to parent?
"So * * * to set it aside, she has to show excusable neglect, which is not as broad as, 'I called the night before and no one allowed me to appear by telephone.' She knows of the hearing, she knew of the date, she had proper notice for personal appearance, knew of the consequences."
*263 Without further discussion, the juvenile court ruled, "I'm going to deny the appearance by telephone today and proceed with the prima facie ." Mother's attorney objected to those rulings, and the court replied, "All right. That's fine."
After prohibiting Kochlacs from participating any further in the hearing on mother's behalf, the juvenile court permitted DHS to present its prima facie case. The court heard from mother's caseworker, Spence, who testified in support of the allegations set forth in each termination petition. Among other things, Spence testified that mother suffered from an "emotional illness, mental illness, or mental deficiency of such nature that it render[ed] her [incapable of] parenting." Specifically, mother had been diagnosed with "very low intellectual functioning."
At the conclusion of the hearing, the juvenile court determined that DHS had established, by clear and convincing evidence, statutory grounds for terminating mother's parental rights, see ORS 419B.504 (authorizing termination upon a showing of parental unfitness when child's integration into parent's home is unlikely to occur within a reasonable time), and that it was in the best interests of the children to terminate mother's rights, see ORS 419B.500 (establishing that prerequisite to the termination of parental rights). In the course of rendering those rulings, the court revisited the issue of mother's failure to be personally present for the hearing, noting
"that she did have personal service, she knew she needed to be here. She knew that travel vouchers were available to her, she demonstrated that through her actions of requesting a travel voucher for a visit yesterday, which she didn't ever accept, and she failed to appear. So, it's the Court's understanding that she chose not to be here in court today and knew the consequences of what would occur if she did not appear."
The court did not, however, indicate whether those findings were in regard to the denial of mother's request to appear telephonically at the settlement conference, the court's decision *788 to proceed with a prima facie trial, or both.
As noted, mother challenges both rulings on appeal. Although we review the termination of parental rights de novo , *264 ORS 19.415(3)(a), the parties agree that the decisions at issue in this case are both reviewed for abuse of discretion. See ORS 419B.918(1) (providing that "a court may permit" a person to participate in termination proceedings telephonically (emphasis added)); ORS 419B.819(7) (providing that a court "may" proceed to terminate a parent's rights in the parent's absence if the parent fails to appear for a hearing related to a termination petition). We proceed with the same understanding as to our standard of review. Accordingly, we review the juvenile court's decisions to determine whether either reaches "an end not justified by, and clearly against, evidence and reason," or that is otherwise "outside the range of legally permissible outcomes." State v. Sewell , 257 Or. App. 462, 469, 472, 307 P.3d 464, rev. den. , 354 Or. 389, 315 P.3d 420 (2013) (internal quotation marks omitted).
In mother's first assignment of error, she argues that the juvenile court's discretionary decision denying her request to appear telephonically was deficient in either of two ways. First, mother argues, because the court failed to articulate why it was unwilling to grant mother's request, it erred by failing to make a record sufficient for our review. See Olson and Olson , 218 Or. App. 1, 15, 178 P.3d 272 (2008) (requiring, "[w]hen a trial court makes a discretionary decision, [that] the record * * * reflect a proper exercise of that discretion"); see also State v. Kacin , 237 Or. App. 66, 73, 240 P.3d 1099 (2010) (summarizing cases establishing principle that a court must "supply enough information to enable appellate courts to engage in meaningful review of the court's exercise of discretion"). Second, to the extent that we might be able to glean the basis of the juvenile court's decision from the record, its reasons for denying mother's request to appear by phone are, in mother's view, insufficient, given the competing interests at stake. DHS responds that the record establishes the basis for the juvenile court's decision and that the arguable existence of good reasons to allow mother to appear by phone does not establish that the court abused its discretion in denying that request.[5]
*265 Although mother contends that there is an insufficient record of the juvenile court's reasoning, she suggests that the court's decision may have rested on the following considerations. First, there was an objection by the children's attorney, which, the court understood, precluded it from allowing a telephonic appearance. Second, DHS had offered mother "a travel voucher for a visit * * * which she didn't ever accept."[6] And third, mother, who "knew the consequences" of failing to appear, "chose not to be here in court today." Mother argues, however, that, even assuming that those circumstances and findings formed the basis of the juvenile court's decision, they fail to support the court's discretionary choice.
DHS, understandably, does not defend the juvenile court's rationale that it could not allow mother to appear by phone over the objection of another party. See State v. Romero (A137858) , 236 Or. App. 640, 643-44, 237 P.3d 894 (2010) ("Where * * * a trial court's purported exercise of discretion flows from a mistaken legal premise, its decision does not fall within the range of legally correct choices and does not produce a permissible, legally correct outcome."). As for the court's finding regarding the availability of a travel voucher, mother correctly observes that the record does not reflect that mother had ever declined to accept an available voucher, whether or not vouchers were available *789 to assist mother in getting to court. And, in regard to the court's finding that mother "knew the consequences" of failing to appear and yet "chose not to be here in court," mother questions whether the record supports the court's understanding, given mother's "low intellectual functioning" and the lack of evidence that mother had the ability-and therefore the choice-to be in court.
Mother further contends that, whatever merit those considerations might have, they simply do not outweigh the *266 competing interests at stake. That is, those considerations fail to reflect any burden on the court or the parties that would have resulted from allowing mother to appear by phone, while the consequences of denying that request are considerable. Mother notes that the scheduled hearing was a procedural settlement conference rather than a trial of the merits; she posits that her personal role at that hearing would have been limited to listening to statements from the court and the attorneys. Moreover, the court had already scheduled her matter for trial; as we understand mother's argument, allowing her to appear by phone at the settlement conference would in no way have interfered with trial proceeding as scheduled, giving all parties a full opportunity to see, hear, and cross-examine any witnesses who might have testified. Finally, allowing mother to appear telephonically would have precluded the court from moving forward with a prima facie trial in her absence, and she and her children would have been afforded the considerable benefit of a full trial on the merits, complete with mother's participation and legal advocacy on her behalf.
For its part, DHS suggests that the record supports the findings that the juvenile court expressly made and that the "court's rejection of mother's arguments establishes that it found that she had not established good cause to grant her verbal motion or [to excuse] her failure to timely file a written motion." That, DHS argues, "is sufficient to establish the basis for its exercise of discretion." And, in DHS's view, because the court had statutory authority to deny mother's request-including under ORS 45.400, which, as noted, has no bearing in this case-its decision fell "within the range of legally correct choices and did not constitute an abuse of discretion."
Ultimately, however, it is unnecessary to decide which side has the better argument as to mother's first assignment of error. That is because, relying on many of the same considerations as to mother's second assignment of error, we conclude that, whether or not it was an abuse of discretion to deny mother's request to appear telephonically, the juvenile court abused its discretion in proceeding with a prima facie trial in her absence. And, because that conclusion requires us to reverse the judgments terminating *267 mother's parental rights and to remand for further proceedings, we need not decide whether the court also abused its discretion in denying mother's last-minute request to appear telephonically.
Under ORS 419B.819(7),
"[i]f a parent fails to appear for any hearing related to the petition * * * as directed by summons or court order under this section or ORS 419B.820, the court, without further notice and in the parent's absence, may:
"(a) Terminate the parent's rights * * *."
Thus, given mother's absence at the settlement conference and the juvenile court's denial of her request to appear by phone, there is no dispute that the court had discretionary authority to terminate mother's parental rights in her absence. The issue that mother's second assignment of error raises is whether the court abused its discretion in doing so. As explained below, we conclude that it did abuse its discretion.
In urging that we reach that conclusion, mother essentially adopts, in support of her second assignment of error, the arguments that she made under her first assignment.[7] She notes that the juvenile court rejected *790 mother's request to appear telephonically and decided to proceed with a prima facie trial in a single decision-announcing that it was "going to deny the appearance by telephone today and proceed with the prima facie "-and argues that the latter part of that decision suffers from the same deficiencies as the first. That is, mother contends that the record is devoid of anything to adequately explain the court's exercise of its discretion and that the decision that the court ultimately made constituted an abuse of that discretion.
DHS's response is similarly economical and contends that the record demonstrating the basis for the juvenile court's first decision equally demonstrates the basis for its second decision, permitting DHS to proceed in mother's *268 absence.[8] As with the first argument, however, DHS does not truly engage with the essential issue: whether the basis for the court's ruling-however that basis is characterized-reflects a sound exercise of the court's discretion.
We conclude that the record does not reflect a sound exercise of discretion. Specifically, the juvenile court abused its discretion by failing to consider the interests necessarily at stake when deciding whether to proceed with a prima facie trial over mother's objection. Further, to the extent that the court may, in fact, have considered those matters without some indication that it was doing so, the court erred by failing to make an adequate record of that decision. See Olson , 218 Or. App. at 15, 178 P.3d 272 ("Although the court's explanation need not be lengthy or complex, it must comport with the applicable legal framework and describe the basic reasons for the decision.").
As mother notes, the interests at stake for her and her children are undeniably great. There are few interests more fiercely protected by our justice system than those inherently at issue here: a parent's right to her children, the determination of what is in those children's best interests, mother's right to hear and confront the evidence against her, mother's right to be heard, and mother's right to have the assistance of counsel. By proceeding with a prima facie trial, the juvenile court deprived mother of many of those rights outright and dramatically curtailed its protection of others. That is not to say that a parent cannot forfeit those interests-many do, expressly or through conduct-but, under the circumstances of this case, the sound exercise of discretion did not allow the juvenile court to disregard those interests when deciding how to proceed under ORS 419B.819(7).
Here, mother objected through counsel to the juvenile court's decision to proceed without her. Admittedly, counsel did not articulate what harmful consequences were likely to befall mother-or, conceivably, her children-if the court were to move forward with a prima facie trial.
*269 As we have explained, however, a juvenile court's decision to allow DHS to proceed against a parent who is neither present nor represented by counsel inevitably raises very significant concerns. Despite the inherent consequences of proceeding to trial, the court does not appear to have considered any such matters before deciding to proceed, and neither the court nor any party identified any interests that might nonetheless have warranted that decision over mother's objection. And, on this record, any such interests appear limited. As mother points out, the record does not reflect any burdens or concerns for the court or the parties that would arise if mother's trial on the merits were to be left on for the previously scheduled dates of September 9 and 10. Notably, father's matter appears to have been left on for those dates; presumably his trial would have proceeded as scheduled if he ultimately decided not to voluntarily relinquish his rights. Nothing in the record suggests that similarly leaving mother's matters on for trial would have resulted in additional difficulties or have otherwise disturbed the orderly conduct of the court's business. Cf. Dept. of Human Services v. J. R. D. , 286 Or. App. 55, 68-69, 398 P.3d 489 (2017) (DeHoog, J., concurring) (noting potential hardships for court and parties when parents fail to appear *791 for contested hearings). And, although the juvenile court did identify one equitable rationale for penalizing mother's absence-namely, that, despite her diminished intellectual capacity and identified transportation issues, mother understood the consequences of not showing up and voluntarily chose not to be in court-it is far from clear how, if at all, the court viewed that failure on mother's part in light of the serious consequences of moving forward and terminating her parental rights without her participation.
Moreover, it is immaterial that the juvenile court may, in fact, have duly considered such matters when it rendered its decision, because the record does not reflect that consideration. As noted, a court exercising its discretion is obligated to make a record of that exercise. Olson , 218 Or. App. at 15, 178 P.3d 272 (a court must "describe the basic reasons" for its discretionary decisions). Here, because the record does not indicate that the court considered those matters at all, much less how it considered them, we are unable to meaningfully *270 evaluate whether the court properly exercised its discretion in deciding to move forward over mother's objection. See Kacin , 237 Or. App. at 73, 240 P.3d 1099 (requiring that the record be sufficient to "enable appellate courts to engage in meaningful review of the court's exercise of discretion"). Accordingly, we conclude that the court's decision to proceed with a prima facie trial and terminate mother's parental rights constituted an abuse of discretion.
Reversed and remanded.

Mother's first two assignments of error significantly overlap. Mother lays out most of the argument relevant to our decision under her first assignment of error and effectively incorporates that argument by reference under her second assignment of error. For that reason, we discuss both assignments, even though our conclusion as to the second assignment is ultimately dispositive. Furthermore, in light of our disposition as to the first two assignments of error, it is not necessary to address mother's third assignment relating to the adequacy of her appointed counsel.

C does not have an identified father. After DHS filed a petition alleging G to be within the juvenile court's jurisdiction, G's father admitted to the relevant allegations along with mother. G's father is not a party to this appeal.

Father, on the other hand, did appear with his attorney, who advised the juvenile court that father was contemplating voluntarily relinquishing his parental rights as to G. As a result, the court took no further action in regard to father at the settlement conference.

The record does not disclose what exactly "vouchers" were or whether they were available to assist mother in getting to court, as opposed to traveling to see her children. Mother's caseworker did testify that mother had requested "fuel cards" to aid her in getting to visits, but given that the same witness also indicated that mother should request that assistance from the "visitation center" rather than the caseworker, it is far from clear how, if at all, that resource could help mother make her court appearance.

DHS also makes an extended argument suggesting that mother's failure to comply with the requirements of ORS 45.400 supported the denial of her request. As DHS notes, however, that statute governs telephonic testimony , not all telephonic appearances. See ORS 45.400 (authorizing telephonic testimony upon motion and written notice to other parties where good cause is shown). In this case, mother's request was merely to be permitted to appear by phone, not to testify. Accordingly, ORS 45.400 does not apply.

Mother does not contend that the juvenile court's reasoning and findings stated at the conclusion of the prima facie trial cannot be considered in determining whether the court abused its discretion in denying mother's request at the outset of the hearing.

Mother also advances an unpreserved constitutional argument under her second assignment of error, but we need not address that argument in light of our decision regarding the argument that mother's attorney preserved before being excluded from the balance of the termination proceedings.

Like mother, DHS focuses its argument under the second assignment of error to mother's unpreserved constitutional argument.