486 September 24, 2025 No. 820

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of P. R. D., aka P. D.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

C. D. D.,
aka C. C., aka C. C., aka C. D. D., aka C. D.,
*Appellant.*

Multnomah County Circuit Court
24JU01565;
Petition Number
T2024017;
A186527 (Control)

In the Matter of H. P. L. S., aka H. D.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

C. D. D.,
aka C. C., aka C. C., aka C. D. D.,
*Appellant.*

Multnomah County Circuit Court
24JU02526;
Petition Number
T2024045;
A186528

Maurisa R. Gates, Judge.

Argued and submitted August 28, 2025.

Gabe Newland, Deputy Public Defender, argued the cause and filed the briefs for appellant. Also on the briefs was Shannon Storey, Chief Defender, Juvenile Appellate Section, Office of Public Defense Commission.

Megan Mizuta, Assistant Attorney General, argued the cause and filed the brief for respondent. Also on the brief were Dan Rayfield, Attorney General, and Benjamin Gutman, Solicitor General.

Before Lagesen, Chief Judge, Jacquot, Judge, and O'Connor, Judge.

LAGESEN, C. J.

Affirmed.

**LAGESEN, C. J.**

Mother appeals from judgments terminating her parental rights to her two children, four-year-old P and almost-two-year-old H. Mother assigns error to the juvenile court's rulings denying her motion for a continuance and allowing the Oregon Department of Human Services (ODHS) to present its *prima facie* case for terminating mother's parental rights to both children. We affirm.

ODHS filed petitions to terminate mother's parental rights to P and H and served the petitions on mother, along with summonses directing her to appear in person before the juvenile court. Mother appeared as directed by the summonses for hearings in May and June 2024, and the juvenile court issued written orders directing mother to appear in person at a "call hearing" on August 15, 2024, and for trial on the petitions at 9:00 a.m. on August 19-23, 2024. The written orders also warned mother that she was required to appear in person, that her attorney could not attend in her place, and that, should she fail to appear, the court could proceed in her absence and terminate her parental rights.

Mother appeared at the August 15, 2024, call hearing, and the court issued a new order requiring her to appear in person for the termination of parental rights trial on "08/19/24 through 08/22/24 from 9:00am to 12:00pm and 2:00pm to 5:00pm"; "09/03/24 from 1:00pm to 5:00pm"; and "09/27/24 from 2:30pm to 5:00pm."

Mother appeared for the first two days of trial, but she was 20 to 30 minutes late on each of those days. The first day, the court waited for mother to arrive and, when she did, again reminded her about the consequences of not personally appearing as ordered and encouraged her to notify her attorney if she was going to be late:

> "[Mother], I'm going to ask you to use every effort to be here on time. Had you not walked in, we would have started without you, and your attorney would not have been allowed to participate. So do keep your attorney in the loop if you're running late. I recognize things happen, but you need to keep him informed."

On the second day of trial, mother was not present by 9:19 a.m., although she had communicated with her attorney, who informed the court that mother had "indicate[d] that she should be here in a minute, as we discussed just prior to going on the record" and that she had texted him at 9:19 a.m., "I'm running in." The court ruled to begin that day of trial without her. Mother arrived at some point shortly thereafter during the testimony of the first witness for that day. Mother later explained to the court that she had been late due to "construction and TriMet" because she had taken the bus. The court cautioned mother that she was "very near to the Assistant Attorney General asking to go forward in your absence to do a default" and suggested to mother that she "try to be here earlier, even if you have to hang out in the lobby."

On the third day of trial, mother was again not present at 9:00 a.m. as the juvenile court had ordered. Her attorney informed the court that he had tried to call mother at 9:06 a.m. and that mother did not answer, so he did not "have any updates or status on her whereabouts right now." The court noted that mother had been late every day of the trial, ruled to proceed in mother's absence, and informed the parties that it would consider a motion to proceed with presentation of a *prima facie* case for termination if mother had not arrived by 10:00 a.m.:

> "The record reflects that [mother] has been late on every single day.

> "So there is a witness to be called. So at this time, we are going to proceed. The Court would be entertaining a motion at 10 o'clock, if the state wishes to make one at that time."

ODHS called its witness, and, because mother was absent, the court did not allow mother's attorney to cross-examine that witness. *See* ORS 419B.819(8) ("If the summons requires the parent to appear personally before the court, or if a court orders the parent to appear personally at a hearing in the manner provided in ORS 419B.820, the parent may not appear through the parent's attorney."); *Dept. of Human Services v. M. L. B.*, 283 Or App 911, 913, 391 P3d 999 (2017) (holding that ORS 419B.819(8) barred

the parent's attorney's participation in a termination trial at which the parent failed to personally appear).

After a brief recess, ODHS moved the court to "find mother in default and allow the state to proceed with some *prima facie* testimony." Mother's attorney informed the court that mother had tried to call him in the preceding 10 to 15 minutes, that he had tried to call her back and did not get an answer, and that mother had texted him, although he did not elaborate on the contents of any text messages. The court responded:

"The record will reflect that this court has told your client repeatedly if she is not present, the court would proceed in her absence and allow a *prima facie*, and she is not here at 10:03 a.m."

The court then asked the parties if they wished to address ORS 419B.819(7), and mother's attorney acknowledged that the statute allowed the court to proceed without mother but requested that the court allow him additional time to get in touch with her:

"I agree that [the statute] allows the Court to proceed against my client, but it also allows the Court to take any further action, and my request would be, since my client's been present every day here, since she had tried to call me twice during this hearing, that we allow her not to be defaulted * * * and that I be allowed to make further efforts to clarify where she is and how to get her here in a timely— well, untimely fashion."

The court ultimately ruled "to allow the state to proceed." ODHS called its caseworker, who testified about her work with mother and her children. After the conclusion of the caseworker's testimony, ODHS and the children's attorney presented closing arguments.

The court then noted that it was 11:34 a.m. and explained that it was taking the matter under advisement, but, unless something in the exhibits it had not yet reviewed persuaded it that a permanent guardianship would better serve the children's interests, it would likely terminate mother's parental rights to both children. The court then addressed more fully why it had allowed ODHS to proceed

with presenting its *prima facie* case for terminating mother's parental rights to P and H:

> "And I guess I will touch on, so if it's not clear, why I allowed the *prima facie*. She is not here. There was no definitive information on why she's not here. The statute grants authority—I recognize this is a very important right, but also the information provided is that she was texting.
>
> "The information has already been provided that she has a phone. A clear message could have been given about what her standing is.
>
> "And again, there has been no information, other than she attempted to text, of why she is not here. And she still is not here.
>
> "The court deliberately did not address this issue until 10 o'clock because her habit was to be here roughly around 9:30.
>
> "The court also believes her not being here could be a decision by her, as well."

Several months later, in December 2024, the juvenile court entered judgments terminating mother's parental rights to both P and H. Mother timely appealed those judgments.

We review both a trial court's denial of a motion for a continuance and decision to proceed with a *prima facie* trial for abuse of discretion. *Dept. of Human Services v. K. D. S.*, 292 Or App 258, 264, 423 P3d 784 (2018). "A court exceeds its discretion only when its ruling is outside the purview of permissible legal choices." *State v. Gale*, 240 Or App 305, 310-11, 246 P3d 50 (2010).

We begin with mother's claim that the juvenile court abused its discretion in allowing ODHS to proceed with a *prima facie* trial in her absence. ORS 419B.819(7) authorizes a juvenile court to proceed with a trial and terminate a parent's parental rights in their absence, if the court has ordered the parent to appear in person and the parent fails to appear as ordered, providing:

> "If a parent fails to appear for any hearing related to the petition * * * as directed by summons or court order under

this section or ORS 419B.820, the court, without further notice and in the parent's absence, may:

"(a)   Terminate the parent's rights * * * either on the date specified in the * * * order or on a future date; and

"(b)   Take any other action that is authorized by law."[1]

Mother does not dispute that the court ordered her to appear in person at 9:00 a.m. on the dates scheduled for trial, that the order complied with the requirements of ORS 419B.820, and that she did not appear in person as ordered. Nonetheless, she contends that the juvenile court abused its discretion because it failed to consider the significant interests at stake before proceeding with the trial in mother's absence, relying on *K. D. S.*, 292 Or App at 268-69. ODHS responds that the court acted within its discretion under ORS 419B.819(7) in allowing ODHS to proceed in presenting a *prima facie* case.

In *K. D. S.*, the juvenile court ordered the mother to appear in person at a settlement conference in July 2017 and for two days of trial on the petitions to terminate her parental rights in September 2017. *Id.* at 261. The mother, who had been diagnosed with "very low intellectual functioning," did not appear in person for the settlement conference. *Id.* at 261-63. Her attorney asked the court to allow her to appear by phone, explaining that the mother had moved from Medford to Klamath Falls two weeks earlier when she lost her housing and did not have transportation to return to Medford for the hearing. *Id.* at 262. ODHS's attorney informed the court that the mother had requested "vouchers" so that she could return to Medford for visits with her children but had not requested assistance in traveling for court. *Id.* ODHS's attorney further argued that the court should proceed with the trial in the mother's absence because she had notice of the hearing, the requirement that she appear in person, and the consequences of failing to appear as ordered. *Id.* Without further discussion, the court

---

[1]   Under ORS 419B.923(1), a parent whose parental rights have been terminated in their absence may move to set aside the judgment based on excusable neglect, "which encompasses 'a parent's reasonable, good faith mistake as to the time or place of a dependency proceeding.'" *Dept. of Human Services v. J. D. J.*, 340 Or App 50, 55, 569 P3d 1008 (2025) (quoting *State ex rel. Dept. of Human Services v. G. R.,* 224 Or App 133, 139-42, 197 P3d 61 (2008)).

denied the request for the mother to appear by phone and allowed ODHS to present its *prima facie* case. *Id.* at 263. At the conclusion of the hearing, the court ruled to terminate the mother's parental rights, noting that the mother had personal service, knew she needed to be at the hearing, knew that travel vouchers were available, and she failed to appear. *Id.* The court further explained that it was "the Court's understanding that she chose not to be here in court today and knew the consequences of what would occur if she did not appear." *Id.*

On appeal, we concluded that the record did "not reflect a sound exercise of discretion" because the record did not demonstrate that the juvenile court considered the "undeniably great" interests at stake for mother and her children or that "any burden or concerns for the court or the parties *** would arise if mother's trial on the merits were left on for the previously scheduled dates." *Id.* at 268-69. The interests at stake include "a parent's right to her children, the determination of what is in those children's best interests, mother's right to hear and confront the evidence against her, mother's right to be heard, and mother's right to have the assistance of counsel." *Id.*

This case is distinguishable from *K. D. S.* in several significant ways. First, mother in this case failed to appear for the third day of trial, rather than at a pretrial hearing where the parties' and court's interests in proceeding with adjudicating the petitions in mother's absence would have been "limited." *Id.* at 269. Instead, delaying trial due to mother's nonappearance would at least potentially consume additional resources of the court and other parties and further delay achieving permanency for mother's children.

Second, the juvenile court expressly acknowledged that the rights at stake were "important," unlike the court in *K. D. S.*, which did not refer to the mother's rights or interests in the proceeding at all. *Id.* at 268.

Third, the court further demonstrated its understanding of the significance of the rights at stake in the proceeding by delaying the start of trial on the first day until mother arrived and by not allowing ODHS to present

a *prima facie* case for terminating mother's parental rights on either of the first two days of trial when mother did not appear on time. Moreover, when mother did not timely appear on the third day of trial, the juvenile court did not immediately allow ODHS to present its *prima facie* case but instead waited at least an hour before considering whether to do so.

In addition, although mother communicated by text with her attorney when she did not appear as ordered on the third day, no reason was provided for her nonappearance, much less one that would have compelled the court to delay the proceedings to allow mother's participation.

Under the circumstances in this case, the juvenile court did not abuse the broad discretion granted to it under ORS 419B.819(7) when it allowed ODHS to proceed in mother's absence and present a *prima facie* case for terminating her parental rights to P and H.

We turn to mother's contention that the juvenile court abused its discretion in denying her motion for a continuance when she did not appear in person as ordered on the third day of trial, relying on *Dept. of Human Services v. E. M.*, 268 Or App 332, 341 P3d 216 (2014). ODHS responds that the court acted within its discretion in denying mother's request for delay and that mother has not demonstrated that she was prejudiced by the court's denial of her motion for a continuance because nothing in the record shows that granting additional time would have posed any likelihood of securing mother's appearance.

Our case law establishes that a juvenile court abuses its discretion in denying a parent's motion for a continuance of a termination of parental rights trial when the court has been presented with reliable information that the parent's nonappearance is due to circumstances beyond their control. *Id.*; *State ex rel. Juv. Dept. v. Evjen*, 107 Or App 659, 663 n 4, 813 P2d 1092, *rev den*, 312 Or 526 (1991).

In *E. M.*, the father had been in jail in King County, Washington, and his attorney had arranged for him to appear by video from the King County jail for the termination of parental rights trial, which was scheduled to begin

the Monday following Thanksgiving. 268 Or App at 335-36. However, the father was released from jail at 4:50 p.m. the day before Thanksgiving, and he did not appear in person for the first day of trial on petitions to terminate his parental rights to his four children, as ordered by the juvenile court. *Id*. at 336. His attorney was present though and notified the court that the father had been ordered to appear in King County Washington Superior Court one-half hour before the termination trial was scheduled to begin and argued that "he can't be in two courts at the same time." *Id*. Because the father had not attempted to communicate with his attorney or the court regarding his nonappearance, the court denied his "implicit" motion for a continuance and allowed ODHS to proceed with presenting a *prima facie* case for termination in the father's absence. *Id*. at 336-37. We reversed, primarily based on our conclusion that "[p]ractically speaking, father's dilemma—being ordered to appear in two courtrooms at approximately the same time—place[d] him in such a difficult position that the trial court was obligated to choose a different course" than proceeding with trial in the father's absence. *Id*. at 339. We also observed that the juvenile court failed to consider that the father had maintained contact with his attorney in preparing for the trial and had been cooperative with the judicial process, that father had been ordered to appear for arraignment in another state at essentially the same time as the termination trial, and that delaying the trial for "as little as several hours or one day would have allowed father the opportunity to participate in the hearing." *Id.* at 338.

This case is distinguishable from *E. M.* Notwithstanding that mother communicated with her attorney by text message after she failed to appear for the third day of the termination trial as ordered, neither she nor her attorney provided any explanation for her nonappearance, much less information that her nonappearance was a result of circumstances beyond her control, our primary reason for reversing in *E. M.*

Mother essentially argues that the juvenile court was compelled to grant her motion for a continuance because she had maintained contact with her attorney and had

appeared at pretrial hearings and the first two days of trial, and trial was scheduled for several days beyond the one on which she did not appear. Although it would have been within the court's discretion to grant a continuance in those circumstances, the circumstances did not compel the court to delay trial to accommodate mother's failure to appear as ordered where, as here, the court repeatedly had delayed the trial to accommodate mother's failure to appear on time, had warned mother of the likely consequences of failing to appear on time, and had allowed a reasonable amount of time for mother to either appear or to notify her attorney as to why she had not appeared. Accordingly, for essentially the same reasons that the juvenile court had discretion to allow ODHS to proceed with trial in mother's absence, the court also acted within its discretion in denying mother's motion for a continuance.

Affirmed.